**Richard M. WOLFF,
Petitioner-Appellant,**

v.

**UNITED STATES of America, John T.
Hadden, and George Rodgers,
Respondents-Appellees.**

**No. 83–1334.**

United States Court of Appeals,
Tenth Circuit.

June 26, 1984.

Jack Beam, Denver, Colo., for petitioner-appellant.

Raymond P. Moore, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on the brief), for respondents-appellees.

Before McWILLIAMS, BREITENSTEIN and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

Richard M. Wolff, an inmate at the Federal Correctional Institute, Englewood, Colorado, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Colorado. By amended petition, Wolff alleged that his conviction for murder, felony murder and robbery at a general court-martial of the United States Military Court, Okinawa, Japan, on April 1, 1977, violated his Fifth Amendment due process rights and his Sixth Amendment confrontational right. Wolff was sentenced to confinement for life at hard labor, forfeiture of all pay and allowances, a fine, reduction of grade and dishonorable discharge. After hearing on the amended petition, the district court denied the petition. Wolff appeals. We affirm.

Before detailing the salient background facts, a review of the various court proceedings will put the entire matter in context. As indicated, Wolff was convicted of premeditated murder, felony murder and robbery at a general court-martial. At the time, Wolff was a Technician First Class (E–6), U.S. Navy, and assigned to duty at naval installations at Okinawa, Japan. He was convicted of robbery and the murder

of Ship Serviceman First Class Clark, who was assigned as a cashier at an officers' club at Okinawa. The conviction was reviewed and affirmed by the United States Navy Court of Military Review. *United States v. Wolff,* 5 M.J. 923 (N.C.M.R.1978). Thereafter, the United States Court of Military Appeals denied, without comment, Wolff's petition for review, 6 M.J. 305 (N.C. M.R.1979), and later denied, without comment, Wolff's untimely petition for reconsideration, 7 M.J. 390 (N.C.M.R.1979).

As stated, Wolff was eventually moved to the Federal Correctional Institute, Englewood, Colorado. While incarcerated in that institution, Wolff, *pro se,* has instituted four habeas corpus proceedings in the United States District Court for the District of Colorado. The first three have all been finally resolved adversely to Wolff, and none has bearing on the present proceeding, which is the fourth proceeding. Although the present proceeding was instituted *pro se,* counsel was appointed to represent Wolff in the district court, and he is represented in this Court by that same counsel.

For general background facts, see *United States v. Wolff,* 5 M.J. 923 (N.C.M.R. 1978). At the general court-martial, an important government witness was a fellow sailor, Donald M. Drake, who was a friend of Wolff's. Under a promise of immunity, about which more will be said later, Drake testified that several days before the robbery-murder Wolff had told him that he and his wife were going to rob Clark. Drake further testified that shortly after the murder Wolff admitted the murder to him.[1] Drake admitted, however, that on several occasions during the investigatory and preliminary hearing stages, he

had made statements, under oath, that were different from, and contrary to, his testimony at trial. He attempted to explain this by stating that during the preliminary stages he was trying to protect Wolff and his wife, and that in his effort to do so he had implicated others in the murder-robbery of Clark. Drake testified, however, that his testimony at trial was the truth of the matter.

As stated, in the present proceeding Wolff, *pro se,* first alleged that Drake's testimony at trial was perjured, and that the government knowingly used it. After appointment of counsel, an amended petition was filed, and the thrust of the amended petition was that the facts and circumstances surrounding Drake's testimony violated Wolff's due process rights and his confrontational right.

As stated, prior to trial Drake had been offered and accepted immunity in exchange for his testifying against Wolff. The government's position in this regard is that Drake had been offered transactional immunity. Wolff's position is that the immunity granted was much broader, in that it granted Drake immunity from perjury prosecution. As we read it, the grant of immunity did not specifically *include* immunity from perjury; however, it did not specifically *exclude* immunity from perjury.

Immunity from perjury, argues Wolff's counsel, destroyed the oath given Drake and violated Wolff's due process and confrontational rights. Regardless of whether Drake was granted only transactional immunity, or something more, it is undisputed that Drake *thought* he had immunity from perjury charges. Drake so testified during the recross-examination by defense coun-

---

[1]. Counsel argues here that Drake's testimony was "the *sine qua non* of the Navy's case." As mentioned in *United States v. Wolff,* 5 M.J. 923 (N.C.M.R.1978), there was other evidence which, in our view, was highly incriminating: (1) before the murder Wolff was deeply in debt, but after the murder Wolff paid his debts and spent money lavishly; (2) search of Wolff's

room resulted in the seizure of a blood-stained shirt belonging to Wolff, and the blood on Wolff's shirt matched the blood of the deceased; (3) Wolff had been seen with the victim on the day of the killing and was observed alone in the victim's car later that same day; and (4) ballistic tests showed that the victim had been killed

sel.[2] However, Wolff's counsel at the court-martial made no objection to Drake's testimony.

■ The failure of Wolff's counsel to make an appropriate objection at the court-martial may have been a matter of trial strategy. If objection had been made, perhaps the matter would have been cleared up on the scene and Drake would have been advised as to the exact extent of the immunity granted and the effect, if any, a transactional grant of immunity might have on his testimony. On the other hand, counsel may have thought that by cross-examination he had destroyed Drake's credibility, and, such being the case, counsel may have decided to allow the court-martial to go on through to conclusion, and *not* raise the fact of Drake's belief that he had perjury immunity at that particular time, which tactic at the same time, would conceivably preserve the matter as a possible basis for subsequent collateral relief, should Wolff be convicted. In any event, the question of whether Drake's mistaken belief that he had perjury immunity violated Wolff's due process and confrontational rights was never raised in the court-martial, though the underlying facts were fully developed. And therein lies the root of the present controversy, which is whether the fact that the matter raised in this present federal proceeding was *not* raised at the court-martial bars federal relief. We conclude that it does, relying on the rationale of *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ Counsel would avoid the impact of the above cited cases by observing that *Frady* involved a collateral attack (§ 2255) on a conviction in the local District of Columbia courts and that *Engle* and *Wainwright* involved collateral attacks (§ 2254) on state court convictions, whereas the instant case involves a collateral attack on a court-martial conviction. This admitted difference is not in our view of any great significance. Indeed, " 'the range of inquiry in acting upon applications for habeas corpus for persons confined by sentence of military courts is more narrow than in civil cases.' " *Kennedy v. Commandant,* 377 F.2d 339, 342 (10th Cir.1967) (quoting *Suttles v. Davis,* 215 F.2d 760, *cert. denied,* 348 U.S. 903, 75 S.Ct. 228, 99 L.Ed. 709 (1954)). The function of civil courts in reviewing a military conviction on a petition for a writ of habeas corpus is to determine whether the military courts gave fair consideration to the petitioner's constitutional claims. *King v. Moseley,* 430 F.2d 732 (10th Cir.1970) (citing *Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953)).

■ In the instant case, Wolff's claim that the immunity given Drake violated his due process and confrontational rights was not presented to the military courts. However, we deem it unnecessary to proceed to examine the merits of Wolff's constitution-

---

by two shots to the head which came from Wolff's .22 calibre pistol.

**2.** The record indicates Wolff's defense counsel inquired about Drake's grant of immunity during his recross-examination of Drake, and Drake answered as follows:

Q. Isn't it a fact, Constructionman DRAKE, that you're testifying today under a grant of immunity from the Convening Authority?

A. Yes, sir. It is.

Q. And what are the terms of that grant of immunity?

A. Defer me of prosecution of anything dealing with the WOLFF case, the robbery or murder.

Q. How about perjury? Are you secure from prosecution for perjury?

A. Yes, sir.

Q. And if they find out later that you perjured yourself today on the stand can they, under the terms of that agreement, bring charges against you?

A. No, sir.

Q. So you are protected from anything that you might say today; doesn't matter whether you are telling the truth or whether you are not telling the truth. No one can prosecute you for lying on the stand here today, is that correct?

A. Yes, sir.

Rec. Vol. I at 71.

al claim because we believe Wolff waived this claim by failing to object to Drake's testimony at the court-martial. As we understand it, the military courts have adopted the general rule that appellate courts will ordinarily review claimed errors only on the basis of error as presented to the lower courts. *See, e.g., United States v. Anderson,* 10 M.J. 743, 746 (N.C.M.R. 1981) (quoting *United States v. Weaver,* 1 M.J. 111, 114 n. 1 (C.M.A.1975)); *United States v. Dupuis,* 10 M.J. 650, 652 (N.C.M.R.1980). This general rule appears to be functionally analogous to a state contemporaneous objection rule. Therefore, we believe the principles of *Frady, Engle,* and *Wainwright* apply to the instant case, i.e., the underlying facts were fully known to counsel at the court-martial and his failure to object forfeited Wolff's claim.

The *Wainwright-Frady-Engle* line of cases recognizes that if there is good cause for not having advanced the particular matter relied on in the federal collateral habeas corpus proceeding at trial, and there is actual prejudice, then federal relief may be available. In the instant case there is no showing of cause. It could be argued that this is a case of deliberate by-pass. In *Angle v. Laird,* 429 F.2d 892 (10th Cir. 1970), *cert. denied,* 401 U.S. 918, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971), this Court held that the failure of petitioner's counsel to make appropriate objections at court-martial in that case was a deliberate by-pass or waiver of his right of confrontation and cross-examination. Be that as it may, certainly in the instant case there is no demonstrated cause for failing to present the matter in the court-martial and thereby obtain an immediate ruling on the objection.

Judgment affirmed.