**Francisco A. GUERRERO, Petitioner-Appellant,**

v.

**John O. MARSH, Jr., Secretary of the United States Army, in his official capacity, Respondent-Appellee.**

No. 86–1861.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1987.

Decided June 8, 1987.

Howard J. DeNike, San Francisco, Cal., for petitioner-appellant.

Captain Mark Landes, Dept. of the Army, Washington, D.C., for respondent-appellee.

Before HUG, NELSON and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Francisco A. Guerrero appeals from a dismissal of his petition for a writ of mandamus against John O. Marsh, Secretary of the Army. We reverse the dismissal and grant the writ.

## FACTS

On March 20, 1947 Francisco A. Guerrero was granted an honorable discharge from the Army of the United States. The discharge identified him as born January 6, 1919 in Baguio. His rank was that of Staff Sergeant, Headquarters Company, Second Battalion, 14th Infantry, and the discharge was signed by S.E. Fain, Colonel, Infantry, Commanding. The discharge noted that Guerrero had participated in the Luzon campaigns and in the Philippine defense campaign and that he had received the Asiatic-Pacific theatre ribbon with one bronze star; the Philippines Defense Ribbon with one bronze star; the World War II victory medal; and the Philippine Independence Ribbon. His mustering out pay was $300 and he was paid an additional sum due for other service, so he received a total of $725.38 on discharge. His character was described as "excellent."

Military history, of which the court may take judicial notice, indicates the importance of the Filipino guerrillas in the liberation of the Philippines. The testimony available ranges from recognition of specific heroic exploits, such as the liberation of the Los Banos Camp, *see* E.M. Flanagan, *The Los Banos Raid* 65–66 (1986), to acknowledgments of the assistance given individual American officers, *e.g.*, S. Mellnick, *Philippines Diary/1939–1945*, 241–265 (1969). It has been broadly stated that without the guerrillas' "support and fanatical loyalty the American invasion forces would have suffered serious losses in men and materiel." T. Agoncillo, *The Fateful Years: Japanese Adventure in the Philippines, 1941–45* II, 776 (1965).

Specifically, the role of the 14th Infantry has been recognized by the official history of the United States Army. The 14th Infantry was one of several guerrilla units organized by Colonel Russell W. Volckmann in the fall of 1942—organized into the United States Army Forces in the Philippines (Northern Luzon) (USAFIP(NL)). When the Sixth Army reached Luzon on January 9, 1945 these forces numbered 8,000 men. *United States Army in World War II: The War in the Pacific:* R.R. Smith, *Triumph in the Philippines*, 465–466 (1963). The USAFIP(NL) made a substantial contribution to the Sixth Army's campaign in Northern Luzon, causing the redeployment of an entire Japanese division. Between January and June of 1945, the guerrilla units, including the 14th Infantry, were responsible for the killing of nearly 10,000 Japanese while suffering 3,375 casualties themselves. *Id.* 556.

These well-known accomplishments of the guerrillas integrated into the American army and the bare details of his honorable discharge are supplemented by Guerrero's affidavit filed in connection with this case. Before World War II he was employed at the officer's mess, Camp John Hay in Baguio City. At the time war broke out, he was a locomotive driver. He resigned his job and reported back to the officers' mess where he worked a short time until the command pulled out. Beginning in February 1942 he enlisted in the Philippine

Scouts and engaged in hazardous guerrilla activity. In July of 1942 Lt. Boado let him pledge allegiance to the United States and inducted him into the 14th Infantry of the United States Army. He conducted several guerrilla operations at Camp John Hay, now occupied by the Japanese. In November 1942 he was arrested by Japanese military police who tortured him. After a month of inhuman treatment, during which he refused to reveal information about the whereabouts of American officers with whom he had worked, he was released.

He continued his guerrilla activities and was again arrested by the Japanese in March 1943. Again released, he continued to harass the Japanese army in the Baguio area. In October 1944 Lt. Boado, who had inducted him, was captured and killed by the Japanese, along with Alfredo Dollente, who had been Guerrero's companion in his forays. Under the direction of Lt. Fianza, Guerrero continued to perform military missions, getting information on the movements of the Japanese army. In May 1945 he led a tank battalion of American troops into Baguio City. En route he was sent to give surrender orders to Japanese holed up in caves; he engaged in hand to hand fighting with a Japanese soldier who attacked him with a bayonet. After the liberation of Baguio he worked at regimental headquarters gathering information on people blacklisted for cooperating with the Japanese. After his discharge on May 20, 1947, Guerrero went to school financed by his veteran's benefits.

Guerrero's affidavit is buttressed by the affidavits of soldiers who served in the Philippines and knew Guerrero in person. These witnesses include Sgt. Andres Quion; Sgt. Augustin Dollente; Private Boligon Igorot; and Lt. Hospicio Angluben. Private Igorot confirms the arrest of Guerrero by the Japanese military police on suspicion of being a soldier. Augustin Dollente is the father of Alfredo Dollente, Guerrero's companion who was executed by the Japanese along with Lt. Boada. Lt. Angluben's affidavit sets out that he knew Guerrero as a member of the 14th Infantry engaged in military intelligence.

Headquarters, U.S. Command Force, Western Pacific, APO 707, on October 8, 1946 made a determination that Guerrero had been inducted into the Army of the United States on July 27, 1942 "in the grade of Staff Sergeant." This determination is documented in the Army's own files. In a letter of January 17, 1950, the Adjutant General Records Depository, Philippine Commands (Air Force) and 13th Air Force, APO 900, advised an office of the Personnel Records Branch that Guerrero's status had been revoked because he had not been physically present at his induction. No reason appears why the Air Force should have had jurisdiction over his case.

In response to this letter the Adjutant General in Washington on April 20, 1951 directed a review of Guerrero's status in conformity with "the criteria for determining eligibility for 14th Infantry, AUS, status." In response to this directive, the Adjutant General, Special Correspondence Section, DPRB, undertook a review of Guerrero's record in accordance with these criteria. The review noted that a number of inductions were made into the army by American officers in the field, not always complying with every legal technicality; that official documents showing the induction did not always exist; and that affidavits might be the best support that could be furnished for proof of induction into the 14th Infantry. After a thorough consideration of Guerrero's file, the review memorandum concluded that the United States Army status of Guerrero had been "formally recognized by an authorized headquarters on October 8, 1946 operating under an approved policy in effect at that time." The bottom line of the review was that Guerrero should be advised that he was recognized as having status in the United States Army "as a result of his service with the 14th Infantry regiment," and that the Veterans Administration and the Finance Office of the Army should be notified to the same effect. This memorandum carries the notation "Approved: recommended action will be taken." The memorandum is signed by the Adjutant General acting by authority of the Secretary of the Army.

On November 10, 1953 a form appears in the army file on Guerrero, which reads as follows:

Military status as a member of the Army of the United States, previously granted through alleged service with the 14th Infantry Regiment (PA), has been revoked.

Determination has been made to the effect that any military service subject may have had was as a member of the Philippine army, inducted into the service of the armed forces of the United States.

This form is initialed by the Adjutant General. No explanation at all appears as to why there has been a revocation of Guerrero's status. It is indeed possible and perhaps probable that the revocation referred to is the revocation of January 17, 1950 which was specifically disapproved by the memorandum of July 6, 1951.

On June 27, 1977 the National Personnel Records Center issued a "Certification of Military Service" to Guerrero, certifying that he had been a member of the Army of the United States from July 27, 1942 to March 20, 1947 and that his final rank had been that of Staff Sergeant. On March 15, 1978 Guerrero received a letter from the Office of the Adjutant General informing him that in 1953 "an intensive study" had been conducted of the history of the 14th Infantry and that it had been determined that he had been granted status in the 14th Infantry "erroneously" because his name had not appeared on an official roster of July 14, 1942. The letter said the certificate from the National Personnel Records Center was "null and void."

### PROCEEDINGS

On March 15, 1983 Guerrero applied to the Army Board for Correction of Military Records (the Board), asking the Board to correct the determination as to his army status. The Board took no action on this request, and it is not clear from the record that the Board even had an opportunity to consider the request. On March 16, 1983 Guerrero received a letter from the Adjutant General's office stating the following:

Applications for corrections of determinations affecting members of the Philippine Army who served in the Philippines during this period are not considered by the Army Board for Correction of Military Records. These applications are referred to this Center for statutory review under the provisions of the Missing Persons Act.

On June 6, 1985 Guerrero filed this action for mandamus in the district court. The district court ruled that the action should be dismissed because "the petition was filed beyond all applicable statutes of limitation and is therefore untimely."

### ISSUE

Is Guerrero's petition for mandamus barred by any statute of limitations?

### ANALYSIS

Guerrero's injury, for which he seeks redress in this action for mandamus, is the failure of the Board "to exercise its express statutory jurisdiction." *Baxter v. Claytor*, 652 F.2d 181, 186 (D.C.Cir.1981). No statute of limitations prevents the Board from considering Guerrero's request. *Id.*

A three year time limit does exist, which the Board may waive "if it finds it to be in the interest of justice." 10 U.S.C. § 1552(b). The question whether the statute should be waived is a determination "for the Board to make in the first instance." *Baxter* at 186.

■ According to a letter submitted to Congress by the Secretary of the Army, the Board's practice has been to undertake a review of each case on the merits as a prerequisite to determining whether it would be "in the interest of justice" to waive the statute of limitations. The Secretary of the Army to Chairman of the House Committee on Armed Services, December 22, 1965, *H.R.Rep. No.* 1825, 89th Cong., 2nd Sess. 3–4 (1966). We assume that the Board would apply the same policy here unless, for reasons unknown to us, the Board has had occasion to abandon this apparently sensible approach.

The Secretary of the Army in this case invokes *Nichols v. Hughes*, 721 F.2d 657

(9th Cir.1983). That case alleged a violation of the petitioner's civil rights by various naval officers and had nothing to do with the correction of a service record, which in fact had taken place in that very case 18 years after the original record had been made. The case has no application here.

■ The Board refused jurisdiction over Guerrero's request in 1983. Therefore, Guerrero's suit is well within the six-year statute of limitations period for civil suits against the Government. 28 U.S.C. § 2401 (1982).

We therefore reverse. The petition for writ of mandamus is granted. The Secretary or the Board as his delegate shall exercise jurisdiction over Guerrero's claim pursuant to 10 U.S.C. § 1552.

■ Guerrero has prevailed under the Equal Access to Justice Act, 28 U.S.C. § 2412, and may apply for attorney's fees to this court.

So ordered.