Raymond R. RIDGELY, Col., USAR, Appellant,

v.

John O. MARSH, Jr., Secretary of the Army, et al.

No. 88–5036.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1988.

Decided Feb. 7, 1989.

William J. Kenney, for appellant.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before WALD, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case involves an action by the appellant, Raymond R. Ridgely, a former colonel in the United States Army Reserve, to review a judgment of the Army Board for Correction of Military Records ("Board"). Before retiring from the Army Reserve, Ridgely had sought to postpone his mandatory retirement date in order to qualify for the higher pension level granted commissioned officers with at least twenty years of active service. The Department of the Army denied his request, and calculated his total active duty service to be fifty-three days short of eighteen years. Reservists who have completed eighteen years of service are protected by 10 U.S.C. §§ 1006, 1163(d) (1982) from involuntary release from active duty if they are within two years of qualifying for retirement. Ridgely applied to the Board for correction of his records in order to account for days of active service which, he claimed, if properly credited, would bring his total to over eighteen years. The Board found, among other things, that Ridgely's claims for the correction of records for periods prior to May 8, 1980, were barred by the statute of limitations, and, consequently, that his separation from active service was proper. On review, the District Court for the District of Columbia ruled that the Board's decision was not arbitrary or capricious, and, therefore, granted the Army's motion for summary judgment.

In a *per curiam* Order, *see Ridgely v. Marsh,* No. 88–5036 (D.C.Cir. July 29, 1988), this court granted in part the Army's motion for summary affirmance of the District Court's Order. We denied summary affirmance only with respect to the question whether the statute of limitations, 10 U.S.C. § 1552(b) (1982), bars consideration of Ridgely's claims for additional credit for active duty served prior to May 8, 1980. This, then, is the only issue left for us on appeal. Because we can find no record evidence to support the Board's judgment that Ridgely's claims were untimely filed, we reverse the District Court's summary dismissal of these claims, and remand for a Board determination on the merits.

## I. BACKGROUND

Ridgely was a colonel in the United States Army Reserve serving on active duty. Anticipating his mandatory separation date on March 4, 1985, *see* 10 U.S.C. § 3851(a) (1982 & Supp. IV 1986), Ridgely sought to extend his period of service beyond the mandatory retirement date so that he could qualify for an army pension based on twenty years of active service under 10 U.S.C. § 3911 (1982). Ridgely's request for extension was denied, and, upon his retirement, the Army calculated that Ridgely had served 17 years, 10 months, and 7 days on active duty. This was 53 days short of the 18 years he needed to trigger the "safe harbor" benefits of 10 U.S.C. §§ 1006, 1163(d), which protect reservists from involuntary release from active duty if they are within two years of qualifying for retirement.[1] With an additional two years of active duty, Ridgely calculates that he would be eligible for retirement benefits roughly three years earlier, and that his monthly payments would be more than $480 per month higher than those to which he is now entitled. *See* Reply Brief for Appellant at 10.

Ridgely's problems with the Army apparently started in September 1984, when the Army sent him a "Request for Verification of Active Federal Service" ("Verification Form"). The document informed Ridgely that, according to the Army's computations, he had accumulated 13 years, 10 months, and 21 days of active federal service. The Verification Form stated that "this form, *coupled with any additional information which you provide,* will serve as a basis for completing an official computation of [Active Federal Service]" (emphasis in original). Joint Appendix ("J.A.") 498. Additionally, the Verification Form asked Ridgely to "verify each entry to insure its accuracy and completeness," and if there were "any errors or omissions, [to] forward [to the Army] documentation which [would] permit discrepancies to be corrected and missing data added." *Id.* Ridgely returned the Verification Form with his corrections noted; in response, the Army modified its calculations and informed Ridgely that he had amassed 17 years, 7 months, and 24 days of active service, J.A. 82–84, and denied Ridgely's request for extension of his active duty past his mandatory retirement date. Although the Army corrected its records to credit Ridgely with 17–plus years, instead of the 13–plus years given pursuant to the Army's original calculations, this correction gave Ridgely less credit for service time than he had requested on the Verification Form.

On April 15, 1985, Ridgely filed an application with the Board asserting that the Secretary of the Army had erred in denying his request to remain on active duty. On July 30, 1986, the Board denied both Ridgely's request to remain on active duty and his application to correct his military records. The Board determined that the Army's decision not to continue Ridgely on active duty was not arbitrary and capricious; that his application for correction of

---

**1.** Section 1163(d) provides, in pertinent part, that "a member of a reserve component who is on active duty and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary," and section 1006 specifically applies this protection to reserve commissioned officers with at least eighteen years of service.

military records for all periods of service prior to May 8, 1980, was untimely; that he was properly separated on March 4, 1985; and that he had presented insufficient evidence of probable material error or injustice. *See In re Ridgely,* No. AC85–06151 (ABCMR July 30, 1986).

In denying Ridgely's request for correction of his records, the Board invoked the applicable statute of limitations, 10 U.S.C. § 1552(b), which provides, in pertinent part:

No correction [of military record] may be made ... unless the claimant or his heir or legal representative files a request therefor ... within three years after he discovers the error or injustice.... However, a board ... may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

Applying this statute, the Board found many of Ridgely's claims to be time-barred, stating:

With regard to all periods of service ending prior to 8 May 1980, the applicant has failed to make timely application for correction of his records, and he has failed to provide sufficient reason why the Board should find it in the interest of justice to consider that portion of his application. Although he states that he discovered the alleged errors in his records on or about 5 March 1985, the Board is of the opinion that he knew of the amount of active duty credited to him at the time he was paid for each period of service, and the three year filing periods toll from the date of payment.

*In re Ridgely* at 13.

Ridgely appealed the Board decision to the District Court for the District of Columbia, making two allegations regarding the statute of limitations. First, Ridgely charged that the statute should not have begun to run on any claims until 1984 when he received the Verification Form, because that was when he "discover[ed] the error" pursuant to 10 U.S.C. § 1552(b). *See* J.A. 496–97. Thus, his application for Board review, dated April 15, 1985, was well within the three-year limitations period. Second, Ridgely argued that, given his long

service with the Army and the significant amount of money at stake, the Board should have considered all of his claims "in the interest of justice," pursuant to 10 U.S.C. § 1552(b), whether or not the statute of limitations had run with respect to the alleged errors predating May 8, 1980. J.A. 4–5.

On December 15, 1987, the District Court granted the Army's motion for summary judgment. J.A. 8. Although acknowledging that the "most meritorious" of Ridgely's challenges was his statute of limitations claim, J.A. 4, the trial court nevertheless rejected Ridgely's arguments. The District Court found that the Board had presented "a reasoned explanation of why it did not find it in the interest of justice to waive the statute of limitations in plaintiff's case, and its decision in this regard was not arbitrary or capricious," J.A. 5 (quoting the Board's Memorandum, J.A. 4); however, the trial court failed to address Ridgely's contentions regarding *when* he discovered the alleged errors in the Army's records.

In a *per curiam* Order dated July 29, 1988, this court granted the Army's motion for summary affirmance with respect to all matters except Ridgely's statute of limitations claims. *Ridgely v. Marsh, supra.* Thus, the sole question before the court now is whether the Board was legally justified in refusing to consider alleged errors in Ridgely's Army record for time served before May 8, 1980. In other words, we must determine whether Ridgely is barred by the statute of limitations from seeking to correct alleged errors in his army service record for periods that predate May 8, 1980.

## II. ANALYSIS

The controlling standard of review in this case is "whether [the] action of [the] military agency conforms to the law, or is instead arbitrary, capricious or contrary to the statutes and regulations governing that agency." *Blevins v. Orr,* 721 F.2d 1419, 1421 (D.C.Cir.1983) (quoting *Dilley v. Alexander,* 603 F.2d 914, 920 (D.C.Cir.1979)). Thus, as we noted in *Blevins,* our review is

"limited but critical." 721 F.2d at 1421. On the record before us, we cannot escape the conclusion that the Board's action was arbitrary and capricious, because we can find no record evidence whatever to support the Board's "opinion" that the three-year filing periods began running each time Ridgely was paid.

Under 10 U.S.C. § 1552(b), an application to correct military records must be filed "within three years *after [the claimant] discovers the error*" (emphasis added). Thus, the statutory test is unarguably one of the claimant's *actual*, not *constructive*, notice. Ridgely contends that the earliest he knew of any Army errors in calculating his service time was in September or December 1984, *i.e.*, when the Army sent its initial and revised computations of his service time. On the record before us, we cannot comprehend how the Board could have found otherwise. Indeed, counsel for the Army offered no satisfactory explanation of the Board's position either in the appellee's brief or during oral argument before this court. We do not find this surprising, because there is simply nothing in the record to support the Board's claim that Ridgely "knew of the amount of active duty credited to him at the time he was paid for each period of service" before May 8, 1980. *In re Ridgely* at 13.

To begin with, the Board decision offers no basis for its unexplained "opinion" regarding *when* Ridgely first knew of the alleged errors in his record. The Board's Memorandum asserts a conclusion that is adverse to Ridgely, and then argues that no waiver of the statute of limitations is warranted under the "interest of justice" exception. *See id.* at 13–15. Upon close examination of the Board's decision, however, it is clear that there is absolutely no evidence to support the conclusion that Ridgely knew of his credited service time during each pay period. The Board's conclusion on this critical point is founded on pure speculation. Furthermore, the discussion of the applicability of the "interest of

justice" exception is utterly irrelevant; the Board's judgment on this latter point does nothing to cure the defect in the record regarding *when* Ridgely knew of the alleged errors predating May 8, 1980.

Moreover, we can discern no basis in law or logic to justify the Board's "opinion" regarding when Ridgely first knew of the alleged errors in his military record. It is a nonsequitur to say that Ridgely knew of the Army's calculations of his *active duty service* by virtue of his receipt of *pay vouchers* over the years. There is nothing in the record to indicate that paid time is coextensive with credited service; indeed, Army counsel does not even purport to advance this argument before the court. Thus, the information on the pay vouchers is not dispositive of the question concerning when Ridgely knew of the alleged errors in his Army records.

On this record, we have no way of knowing how the Army calculated Ridgely's service time for the periods predating May 8, 1980. In fact, we are never told why the Army altered its original calculations by nearly four years when it received Ridgely's corrections on his Verification Form. From the facts before us, one might assume that even the pay stubs themselves were inaccurate. In any event, the main point is that the record is barren of evidence to support the Board's finding that Ridgely knew about errors in his credited service time before May 8, 1980. Ridgely's claim that the earliest he knew of the alleged errors was in September or December 1984 stands absolutely unrefuted.

Because there is no evidence to support the Board's finding that Ridgely's claims were untimely with respect to service periods predating May 8, 1980, we reverse the District Court's summary judgment in favor of the Army on this point. We hold that Ridgely brought his claims within the three-year statute of limitations period.[2] Accordingly, we remand the case so that the Board may consider whether Ridgely's

---

2. We need not decide whether Ridgely first knew of the Army's error in September 1984, when he received the initial Verification Form, or in December 1984, when he received the

Army's revisions, because under either date of notice, Ridgely's April 15, 1985, filing for correction would be timely.

records predating May 8, 1980, contain errors that deprived him of the extra fifty-three days of active duty credit that he needed to avoid involuntary release.[3]

### III. CONCLUSION

We find that Ridgely's application to correct his Army records with respect to alleged errors in his credited service for periods predating May 8, 1980, was timely filed. Thus, we reverse and remand for a Board determination on the merits of these claims.[4]

*Reversed.*

---

**3.** Because we find that Ridgely's claims were timely, it is unnecessary for us to consider the second element of section 1552(b), covering waivers of the statute of limitations in the "interest of justice." *See Guerrero v. Marsh,* 819 F.2d 238, 241 (9th Cir.1987) (because a timely filing had been erroneously dismissed, there was no need to consider waiving the statute of limitations under section 1552(b)).

**4.** Although we offer no views here on the *merits* of Ridgely's claims before the Board, nothing in this opinion should be construed to modify our earlier summary affirmance of the District Court's disposition of all other issues in this case. *See Ridgely v. Marsh, supra* (order granting summary affirmance in part and denying summary affirmance in part). Specifically, we leave undisturbed the Board's previous refusal to count certain periods of leave and travel as active duty service. The days of Ridgely's service still at issue are those that remain unaddressed because of the Board's erroneous finding on the statute of limitations.