Paul Lawrence **KENDALL**, Appellant,

v.

**ARMY BOARD FOR CORRECTION OF MILITARY RECORDS.**

No. 91–5020.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 18, 1993.

Decided June 25, 1993.

Eugene R. Fidell, Washington, DC (amicus curiae) (appointed by the Court), argued the cause, for appellant.

David B. Orbuch, Asst. U.S. Atty., Washington, DC, argued the cause, for appellee. With him on the brief, were Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

Before MIKVA, Chief Judge; WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Dissenting opinion filed by Chief Judge MIKVA.

SENTELLE, Circuit Judge:

In the District Court, Kendall sought review of his court-martial and subsequent refusal of the Army Board for Correction of Military Records to upgrade his dishonorable discharge or consider his claims on the merits. The District Court dismissed his complaint on grounds that it lacked jurisdiction and venue over appellant's claim, and that appellant had waived his present claims by failing to assert them earlier. Because appellant did not raise his claims within the six-year limit set forth in 28 U.S.C. § 2401(a) (1988 & West Supp.1991), the District Court properly found that it did not have jurisdiction over the case. We therefore affirm the District Court's judgment of dismissal.

## I.

On November 27, 1974, Paul L. Kendall, then a twenty-year-old army private, was tried by a court-martial convened by the commander of the 3rd Armored Division in Frankfurt, Germany. Kendall was charged with assaulting a fellow soldier by kicking him, assaulting a fellow soldier by striking

him in the head with a beer bottle, and two specifications of wrongful communication of a threat to kill a fellow soldier. After a two-day trial at which the alleged victim of the offenses never testified, Kendall was convicted of wrongfully communicating a threat to kill a fellow soldier and both assault charges. He was sentenced to a bad conduct discharge, forfeiture of $269 pay per month for twelve months, confinement at hard labor for one year, and a reduction in rank to the grade of Private E–1.

Kendall was transferred to the United States Disciplinary Barracks (USDB) to serve his sentence of confinement. On April 1, 1975, the Clemency and Parole Board remitted his sentence of confinement in excess of 10 months.

Later that month, through counsel, Kendall filed an assignment of error before the Army Court of Military Review (ACMR), requesting that it reject the findings of the court-martial. He asserted that the military judge had erred in failing properly to instruct the members of the court-martial as to the legal definition of excuse and the defenses of self-defense, coercion or distress, and physical and financial inability. However, Kendall did not assert that he was prejudiced by the victim's failure to testify at his court-martial.

On May 21, 1975, the ACMR affirmed the findings and sentence of the court-martial. On June 6, 1975, Kendall, again through counsel, petitioned the United States Court of Military Appeals for review of the ACMR's decision. Appellant raised the same allegations of error that he had raised before the ACMR. The Court of Military Appeals denied his petition on July 17, 1975.

Kendall remained on active duty for five months after his release from the Disciplinary Barracks, and was discharged on September 12, 1975.

In June 1977, appellant submitted an application to the Army Board for Correction of Military Records (ABCMR),[1] requesting that he "be tried by a full jury, not a court of five members." The application was filed without further action, because the ABCMR properly decided that it lacked jurisdiction "where the issue is limited solely to the setting aside of a conviction ... or the deletion of such a record," relying on 40 Op.Att'y Gen. 504 (1947), and would not grant effective relief.[2] The Board notified Kendall of that disposition.

In 1986, approximately ten years later, Kendall submitted another application to the ABCMR requesting that his bad conduct discharge be upgraded to an honorable discharge or discharge for "medical conditions." For the first time, Kendall asserted that the trial record was unjust because the alleged victim was not present during the court-martial; he also argued that he had not been afforded proper legal representation because counsel had failed to issue a subpoena for the alleged victim's attendance and that he himself had been victimized by bias.

The ABCMR denied Kendall's application to have his record changed to an honorable discharge in April of 1986, after reviewing his military records, the record of trial from his court-martial, and his explanation for filing his application beyond the three-year time period provided in 10 U.S.C. § 1552(b) for reviewing applications. In holding the application untimely, the ABCMR ruled that "[t]he alleged error or injustice [of the failure of the victim to be called as a witness] was,

---

1. Under Title 10 U.S.C. § 1552(a) as then effective, "The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove injustice." Pursuant to this authority, the Secretary of the Army has established the ABCMR. Its procedures are prescribed by Army Regulation 15–185, Boards Commissions and Committees: Army Board for Correction of Military Records (May 18, 1977).

2. The opinion of the Attorney General and the policy then in effect, subsequently codified at 10 U.S.C. § 1552(f) (1983), was that the ABCMR's authority "[w]ith respect to records of courts-martial and related administrative records pertaining to court-martial cases" was limited to "correction of a record to reflect actions taken by reviewing authorities ... [or] action on the sentence of a court-martial for purposes of clemency."

or with reasonable diligence should have been, discovered on 12 September 1975, the date [Kendall] was separated." The Board concluded that "it was not in the interest of justice to excuse [Kendall's] failure to timely file."[3]

Appearing pro se, appellant filed the present action in the United States District Court for the Middle District of Pennsylvania in May 1989. His initial pleading sought relief from the ABCMR's 1986 decision, and asked that his court-martial conviction be overturned on the grounds that the "guilty verdict was found due to the violation of the plaintiff's right to have a relevant witness present to testify and be cross-examined by the Defense." The pleading and associated papers requested relief including expungement of the court-martial conviction and the bad conduct discharge, and restoration of all benefits to which he would otherwise have been entitled, including medical benefits.

Kendall's complaint was referred to a magistrate, who erroneously construed it as a petition for habeas corpus. The magistrate's report recommended that the case be transferred to the District Court for the District of Columbia, reflecting the magistrate's incorrect belief that the ABCMR was Kendall's ultimate custodian, and that it was located in Washington, D.C. The Pennsylvania District Court adopted the magistrate's report and the case was transferred.

On June 18, 1990, the government moved to dismiss, or, in the alternative, for summary judgment, contending that the D.C. District Court lacked jurisdiction over the subject matter, that venue was improper, and that Kendall had waived his claims by failing to raise them until his 1986 application to the ABCMR.

Kendall responded with a pleading entitled "Petition for Rebuttal Instance for Petitioner," once again arguing that he did not receive a "fair trial" because, among other reasons, the soldier he was convicted of assaulting was not present at his court-martial.

On January 15, 1991, the District Court granted the government's motion and dismissed the complaint without opinion. This appeal followed.

## II.

In contending that the District Court has jurisdiction over his claim, appellant through *amicus curiae* asserts a federal question cause of action based on his contention that his court-martial conviction was obtained in violation of the Constitution, that is, because the "guilty verdict was found due to a violation of his right to have a relevant witness present to testify and be cross-examined by the Defense." He argues that the very nature of his claim entitles him to a hearing in federal court.

 We disagree. Title 28 U.S.C. § 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a) (1988 & West Supp.1991). This bar applies to all civil actions whether legal, equitable, or mixed. *Spannaus v. United States Dep't. of Justice*, 824 F.2d 52, 55 (D.C.Cir.1987); *Calhoun v. Lehman*, 725 F.2d 115, 116–17 (D.C.Cir. 1983); *Impro Products Inc. v. Block*, 722 F.2d 845, 849–50 (D.C.Cir.1983), *cert. denied*, 469 U.S. 931, 105 S.Ct. 327, 83 L.Ed.2d 264 (1984). The limitation codified in § 2401(a) likewise applies to claims seeking to correct or upgrade the discharge of former service members. *Walters v. Secretary of Defense*, 725 F.2d 107, 113 (D.C.Cir.1983), *reh'g denied*, 737 F.2d 1038 (D.C.Cir.1984) (en banc) (per curiam); *Saffron v. Department of the Navy*, 561 F.2d 938 (D.C.Cir.1977), *cert. denied*, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978).

 In the case at bar, appellant's discharge became final on September 12, 1975. It was on that date that the statute of limitations began to run on any action that he

---

**3.** Under 10 U.S.C. § 1552(b), "a board ... may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice." Procedures specifically governing the ABCMR are found in Army Regulation 15–185, and state that "failure to file within the time prescribed may be excused by the Board if it finds it would be in the interest of justice to do so."

might have arising directly from the discharge, that is, on claims based on an allegedly invalid court-martial. *See Walters v. Secretary of Defense,* 725 F.2d 107, 114 (D.C.Cir.1983) (holding that the § 2401(a) limitation period begins to run when a service member's discharge is final), *reh'g denied,* 737 F.2d 1038 (1984) (en banc) (per curiam). Therefore, insofar as Kendall is seeking review of the decision of the court-martial, his claims were time barred six years later, on September 11, 1981, though he did not raise them until 1986. Compliance with the limitations period is a condition of federal court jurisdiction. *See Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Because appellant has failed to demonstrate such compliance, the District Court properly dismissed this action.

We note that appellant did not raise his claim concerning his right to have a relevant witness present for testimony and cross-examination until almost ten years after his discharge. His failure timely to raise this claim before the ABCMR also compels us to withhold relief.

Insofar as Kendall intends to attack the validity of his original conviction, we note that the military justice system is independent of the federal court system. We have frequently analogized it to state court systems when individuals punished by court-martial seek redress in the federal courts. Indeed, the military justice system is sufficiently analogous to state justice systems to apply identical waiver rules to bar claims raised for the first time during a collateral attack on a court-martial. *Davis v. Marsh,* 876 F.2d 1446 (9th Cir.1989); *Wolff v. United States,* 737 F.2d 877 (10th Cir.), *cert. denied,* 469 U.S. 1076, 105 S.Ct. 575, 83 L.Ed.2d 514 (1984). Had appellant sought to attack a state court conviction in similar circumstances, he would have been deemed to have waived his claims absent a showing of cause and prejudice. *See Engle v. Isaac,* 456 U.S. 107, 124–29, 102 S.Ct. 1558, 1570–72, 71 L.Ed.2d 783 (1982) (holding that failure to comply with state contemporaneous objection

rule bars federal review absent a showing of cause and prejudice); *Wainwright v. Sykes,* 433 U.S. 72, 86–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977) (same); *Roman v. Abrams,* 822 F.2d 214, 222–23 (2d Cir.1987) (same), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989); *Martinez v. Harris,* 675 F.2d 51, 54–55 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982) (same).[4]

■ Military courts, like most civilian courts, generally apply a contemporaneous objection rule—that is, appellate courts will review only those claimed errors properly presented to the trial court. *See United States v. Sykes,* 11 M.J. 766 (N.C.M.R.1981); *United States v. Anderson,* 10 M.J. 743, 746 (N.C.M.R.1981); *Wolff,* 737 F.2d at 879–80. Because Kendall did not raise his current claims in the military court system until over 10 years after his discharge and was therefore too late to raise them properly, he is barred from raising them in federal court absent a showing of good cause and prejudice. The ABCMR noted in 1986 when it rejected Kendall's application to have his bad conduct discharge upgraded, "The applicant has not presented, nor do the records contain, sufficient justification to establish that it would be in the interest of justice to excuse the failure to file within the time prescribed by law." His subsequent presentations to the District Court and this court contain nothing that refutes this conclusion.

In the alternative, Kendall urges us to construe his complaint as a petition for review of the ABCMR's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (1988), rather than an appeal from the court-martial itself. Even under that view, the result is the same.

■ Without considering the question of the District Court's jurisdiction to review the ABCMR's decision that it was not in the interest of justice to excuse Mr. Kendall's failure to file his appeal within the time

---

4. Because Judge Williams does not construe appellant's papers as manifesting a claim for relief from the District Court under a cause-and-prejudice standard, *see, e.g.,* Reply Brief of Amicus Curiae in Support of Appellant at 3, 4–5, he does not join this paragraph or the preceding one.

prescribed by law,[5] the substance of Kendall's claim lacks merit. If the ABCMR's decision is reviewable at all, the applicable standard of review is "whether [the] action of [the] military agency conforms to the law, or is instead arbitrary, capricious or contrary to the statutes and regulations governing that agency."[6] *Ridgely v. Marsh*, 866 F.2d 1526, 1528 (D.C.Cir.1989) (quoting *Blevins v. Orr*, 721 F.2d 1419, 1421 (D.C.Cir.1983)). Neither appellant nor *amicus curiae* have presented sufficient evidence to demonstrate that the ABCMR was arbitrary or capricious in holding that Kendall had failed to present sufficient evidence to show it was in the interest of justice to excuse his failure timely to file his appeal.[7]

As part of his argument for APA review, *amicus curiae* argues that appellant did not have "actual notice" of the claimed inadequacy of his court-martial trial counsel, that is, of the failure to have the alleged victim at his court-martial within the three-year limitation period of 10 U.S.C. § 1552(b). *See* Amicus Curiae Brief at 32–33. Yet appellant admitted in his application to the ABCMR that he knew of the alleged error on November 5, 1975. Thus, Kendall was required by 10 U.S.C. § 1552(b) to apply to the ABCMR for correction of his military records by November 4, 1978, or to demonstrate that the failure should be excused in the interest of justice. As appellant offered no evidence to the ABCMR to explain his delay, we cannot say that the ABCMR was arbitrary or capricious.[8] We therefore affirm the District Court's decision to dismiss Kendall's complaint.[9] Neither this court nor the District Court has subject matter jurisdiction to review Kendall's court-martial because the statute of limitations has run.

## CONCLUSION

Even if the District Court has jurisdiction to review ABCMR decisions on untimely appeals, an issue we do not decide today, there is no reversible error in the Board's application of the statute of limitations on the facts presented to it. We therefore affirm the District Court's grant of summary judgment to the government.

*It is so ordered.*

MIKVA, Chief Judge, dissenting:

I cannot agree with the majority's holding that the ABCMR properly explained its re-

---

5. In *Ballenger v. Marsh*, 708 F.2d 349 (8th Cir. 1983), the Eighth Circuit held that while Board decisions denying "corrective" action are reviewable by federal courts, the ABCMR's discretionary decision whether to review an untimely application was not subject to judicial review.

6. The applicable regulation states that "failure to file within the time prescribed may be excused by the Board if it finds it would be in the interest of justice to do so," Army Regulation 15–185. Therefore, the decision to grant an exception to an applicant appears to be wholly within the Board's discretion.

7. Even if we accept the dissent's view that the "interest of justice inquiry" which the Board is required to conduct before it reviews the merits includes a review of the merits, Kendall still does not prevail. The clarity of the dissent's presentation of Kendall's claim does not mirror his filing with the Board. Kendall's version alleged, for example, "I was given a court martiall [sic] unjustifiably, and all my rights were violated in result."

8. We do not share the dissent's understanding that Kendall "suggested in his application that he was suffering from a mental health ailment...." Dissent at 370. The only allusions to Kendall's mental state in the entire record are his assertion that he was "suffering mental stress due to this undue treatment," and his request for treatment of his alcoholism, based on the unexplained contention that he "did acquire an emotional problem" in the military that had induced his abuse of alcohol. There is no suggestion in the record that he offered these as justifications for his long delay in filing, nor could we expect the Board to understand them as such.

Similarly, there is no evidence that Kendall lacked "access to relevant records and legal materials." Dissent at 370. The only allegation in the record susceptible to such an interpretation is Kendall's statement that "he could not reach his attorney, once he was back in the United States, to effectively check on the appeal that he had asked his attorney to put in." This would hardly seem to excuse the eleven-year interval between the time Kendall conceded knowing of the supposed violation and his application for correction of his military records.

9. Although it appears that the government's objection to venue is well taken, 28 U.S.C. § 1391 (1991), as neither the plaintiff nor defendant in the district court action are located in this judicial district, we need not determine the question since we decide against appellant on jurisdictional grounds in any event.

fusal to waive the three-year limitations period in this case. The ABCMR's bare quotation of the statutory standard "that it was not in the interest of justice to excuse [Mr. Kendall's] failure to timely file" does not satisfy the requirements of reasoned agency decisionmaking. I therefore dissent.

## I

As the majority recounts, Mr. Kendall was convicted before a United States Army court-martial on November 27, 1974, at the age of twenty, for assaulting and communicating a threat to kill a fellow soldier. He was sentenced to confinement at hard labor for one year, forfeiture of $269 pay per month for one year, a reduction in rank, and a bad conduct discharge upon completion of his prison term. The Secretary of the Army subsequently approved a recommendation of the Army Clemency and Parole Board to remit confinement in excess of 10 months.

The majority also provides a detailed account of Mr. Kendall's various attempts to have his conviction reversed and his military record changed to reflect an honorable discharge. Yet, the majority's rendering of events omits some important details, such as the course of the court-martial itself and certain particulars of Mr. Kendall's subsequent appeal and application for correction of military records. The following facts—all of which were known to the ABCMR at the time of its decision not to waive the limitations period in the interest of justice—raise at the very least some serious and troubling questions about whether justice was done at Mr. Kendall's trial and in his subsequent appeals.

## A

During the two-day trial, Mr. Kendall and two witnesses testified that the victim, Private Orr, provoked Mr. Kendall by taunting him and swinging at him with a knife. There is no dispute that Mr. Kendall suffered a knife wound during the altercation with Private Orr. Notwithstanding Mr. Kendall's claim of self-defense, his defense counsel, an Army judge advocate, failed to subpoena Private Orr although he intended to call him as a witness. Mr. Kendall asserts that defense counsel told him that a subpoena was unnecessary because Private Orr would attend the trial because he was the victim of the alleged crime. The prosecution chose not to call Private Orr, and he therefore did not attend or testify at the trial.

In addition to failing to ensure Private Orr's presence at trial, defense counsel appeared woefully ill-equipped for the sentencing phase of the court-martial. He made the bizarre request that the *prosecutor* be called as a witness to testify on the consequences of a punitive discharge. The military judge refused, characterizing the request as "shocking" and "ridiculous," and asked defense counsel if he could present the evidence through a different witness. General Court–Martial Record of Trial at 124. Defense counsel responded, "I am sure I could find another witness outside [the courtroom] that can testify to that." *Id.* Since it appeared that defense counsel had no witness prepared, the military judge refused to allow a recess and proceeded with the sentencing. *Id.* at 125.

## B

Mr. Kendall first appealed his conviction to the Army Court of Military Review (the "ACMR"), which reviews court-martial findings of fact and conclusions of law *de novo*. He was represented by judge advocates from the Defense Appellate Division, whom he maintains never met or consulted with him. The only error asserted by appellate defense counsel was the military judge's failure to give instructions on the law of excuse and self-defense. The appellate counsel did not raise the fact that trial counsel had failed to take the necessary steps to compel Private Orr's attendance. On May 21, 1975, the ACMR affirmed the conviction in a standard form decision without hearing oral argument.

Mr. Kendall next applied for discretionary review from the United States Court of Military Appeals ("CMA"). He was again represented by the Defense Appellate Division, and the very terse submissions to the CMA on his behalf rested on the same grounds presented to the ACMR. On July 17, 1975, CMA denied the petition for review. Mr.

Kendall received a bad conduct discharge on September 12, 1975, shortly after completing his prison term.

## C

Having exhausted his avenues of direct appeal, Mr. Kendall made two applications to the Army Board for Correction of Military Records ("ABCMR") in connection with his court-martial conviction. First, on June 17, 1977, he filed an application requesting a new trial on the grounds that he had a right "to be tried by a full jury, not a court of five members" under the Uniform Code of Military Justice. First Application for Correction of Military or Naval Record (June 17, 1977). The ABCMR replied that

as a matter of policy, ... [the ABCMR] does not accept jurisdiction over applications where the issue is limited solely to the setting aside of a conviction by a military court after such conviction has become final and conclusive, or of the deletion of such a record, as in this case.

Letter from ABCMR to Mr. Kendall (August 24, 1977). Thus, concluded the ABCMR, Mr. Kendall's application would be "filed without further action." *Id.*

On June 1, 1986, nearly nine years after his first application was denied, Mr. Kendall filed a second application with the ABCMR alleging that he had not received proper legal representation. Second Application for Correction of Military or Naval Record (August 7, 1986). In support of his application, Mr. Kendall alleged, *inter alia,* that: (1) trial defense counsel was ineffective because counsel did not know that a subpoena was necessary to ensure Private Orr's attendance; (2) Mr. Kendall was prejudiced by counsel's failure to call Private Orr as a witness; (3) the military judge refused to halt the trial to demand Private Orr's appearance or an explanation for his absence; and (4) Mr. Kendall was denied access to relevant records and contact with his appellate counsel because he was incarcerated at Fort Leavenworth at the time.

On April 6, 1988, the ABCMR issued a Memorandum of Consideration denying Mr. Kendall's application on the ground that it was not timely filed. ABCMR Memorandum of Consideration (April 6, 1988). The ABCMR relied on the following limitations provision:

No correction [of military records] may be made ... unless the claimant or his heir or legal representative files a request for the correction within three years after he discovers the error or injustice. However, [the ABCMR] may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

10 U.S.C. § 1552(b). The ABCMR reasoned that the alleged error or injustice in this case was, or should have been, discovered no later than the date of Mr. Kendall's discharge, September 12, 1975. Thus, the ABCMR concluded, Mr. Kendall's second application was filed more than ten years late.

As for the statutory exception to the three-year limitations period, the ABCMR concluded that Mr. Kendall "has not presented, nor do the records contain, sufficient justification to establish that it would be in the interest of justice to excuse the failure to file within the time prescribed by law." ABCMR Memorandum of Consideration at 3 (April 6, 1988). The letter notifying Mr. Kendall of the ABCMR's decision was even more cursory, stating without explanation the ABCMR's judgment "that it was not in the interest of justice to excuse your failure to timely file." Letter from Chief, Personnel Services Division to Mr. Kendall (undated).

## D

Mr. Kendall next filed an action in the United States District Court for the Middle District of Pennsylvania. (He is currently incarcerated in a state prison within that judicial district on an unrelated charge.) In a filing inaptly titled a "Motion for Relief from Judgment Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure," Mr. Kendall sought review of his court-martial conviction, expungement of his bad conduct discharge, and restoration of military benefits.

A federal magistrate erroneously construed Mr. Kendall's action as a petition for *habeas corpus* and recommended transferring the case to the United States District

Court for the District of Columbia on the theory that Mr. Kendall's ultimate custodians were located here. The parties did not contest the magistrate's recommendation, which was subsequently approved by the court.

Once the case had been transferred to the United States District Court for the District of Columbia, the government moved to dismiss or, in the alternative, for summary judgment. The motion consisted of a multifarious attack on the court's competency to hear the case, and the district court dismissed the action, without opinion, "for the reasons set forth in defendant's memorandum." *Kendall v. U.S. Army Board,* No. 89–1989 (D.D.C. Jan. 15, 1991) (order granting the government's motion and dismissing Mr. Kendall's action). Thus, the particular grounds upon which the district court rested its decision cannot be determined.

## II

### A

The majority holds that the ABCMR was not arbitrary and capricious in rejecting Mr. Kendall's second application with nothing more than an unexplained, conclusory statement "that it was not in the interest of justice to excuse [Mr. Kendall's] failure to timely file." Letter from Chief, Personnel Services Division to Mr. Kendall (undated). The majority asserts that the ABCMR decision was reasonable because Mr. Kendall "offered no evidence to the ABCMR to explain his delay." *Majority op.* at 367.

But Mr. Kendall *did* offer reasons for the delay in filing, none of which the ABCMR acknowledged or addressed in its response. Mr. Kendall suggested in his application that he was suffering from a mental health ailment, and that he did not have access to relevant records and legal materials. Second Application for Correction of Military or Naval Record (August 7, 1986). These are factors that the ABCMR should have considered in making the "interest of justice" determination.

Furthermore, the majority appears to incorrectly assume that the reasons for delay in filing are the only relevant consideration, and that the underlying merits of Mr. Ken-

dall's application for correction are not germane to the "interest of justice" determination. But the ABCMR itself considered the merits evidence that Mr. Kendall presented to be relevant—its Memorandum of Consideration includes a recapitulation of those facts as the "evidence of record." *See* ABCMR Memorandum of Consideration at 2 (April 6, 1988). Courts addressing the issue have also stated that the ABCMR should consider the merits of the application of correction when determining whether the limitations period should be waived in the interest of justice. *See Guerrero v. Marsh,* 819 F.2d 238, 241 (9th Cir.1987); *Mullen v. United States,* 17 Cl.Ct. 578 (1989).

The ABCMR had before it substantial evidence that the military had provided Mr. Kendall with gravely inadequate trial (and appellate) counsel. Whether or not these injustices are of constitutional dimensions, Mr. Kendall certainly presented a strong case that justice would be served by waiving any failure to timely file his second application with the ABCMR. The ABCMR was obligated at the very least to consider the merits of Mr. Kendall's claim, and the proffered reasons for the delay, and to explain why they did not warrant an exception to the ABCMR's three-year limitations period. The bare assertion "that it was not in the interest of justice to excuse [Mr. Kendall's] failure to timely file," which is nothing more than an unexplained parroting of the statutory standard, does not satisfy the requirements of reasoned agency decisionmaking.

### B

The majority's reasoning also ignores more than one of the "simple but fundamental rule[s] of administrative law." *SEC v. Chenery,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). First, the majority appears to have forgotten that a reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency." *Id.* at 196, 67 S.Ct. at 1577. *Accord Burlington Truck Lines v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962) ("*Chenery* requires that an agency's discretionary order be upheld, if at all, on the

same basis articulated in the order by the agency itself. . . ."); *Fort Stewart Schools v. FLRA,* 495 U.S. 641, 651–52, 110 S.Ct. 2043, 2049, 109 L.Ed.2d 659 (1990). The ABCMR never stated that its decision was based on the fact that Mr. Kendall did not explain the reasons for the delay in filing his second application. Rather, as discussed *supra* at 365–66, the ABCMR focused on the underlying merits of Mr. Kendall's application. Having laid out Mr. Kendall's case, however, the ABCMR merely concluded without explanation that the evidence did not warrant a waiver of the statute of limitations.

In approving the ABCMR's mode of decisionmaking, the majority has also disregarded the "axiom of administrative law that an agency's explanation of the basis for its decision must include "a 'rational connection between the facts found and the choice made.' " *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Automobile Insurance,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck,* 371 U.S. at 168, 83 S.Ct. at 245). The ABCMR cannot satisfy its obligation to explain its decision by presenting a laundry list of evidence followed by a conclusion that does not attempt to explain the connection between the former and the latter.

### C

As the foregoing discussion indicates, I would reach the issue that the majority declines to decide—whether the ABCMR's decision whether to waive a time-barred application in the interest of justice is subject to judicial review—and settle the issue in favor of reviewability. The majority purports not to decide the issue, *Majority op.* at 366, 367, but also states that the ABCMR's decision "appears to be wholly within the Board's discretion." *Id.* at 367 n. 5. *See also id.* at 366 n. 4 (citing *Ballenger v. Marsh,* 708 F.2d 349 (8th Cir.1983) (holding that the ABCMR decision not to entertain an untimely claim is unreviewable)).

The existing law in this Circuit is contrary to the Eighth Circuit's approach and the majority's suggestion. The District Court in this Circuit has already held that the the "[A]BCMR's decision whether or not to waive [its] statute of limitations is reviewable under an abuse of discretion standard." *Allen v. Card,* 799 F.Supp. 158 (D.D.C.1992). The *Allen* court relied in part on this Court's decision in *Baxter v. Claytor,* 652 F.2d 181 (D.C.Cir.1981). The *Baxter* Court stated that the ABCMR determination whether to waive its limitation period in the interest of justice "is for the Board to make *in the first instance,*" suggesting that the decision is ultimately reviewable in federal court. *Id.* at 186 (emphasis added). *Accord Guerrero,* 819 F.2d at 241 (adopting *Baxter* ); *Mullen,* 17 Cl.Ct. 578 (rejecting *Ballenger* and adopting an abuse of discretion standard of review). *See also Thornton v. Coffey,* 618 F.2d 686, 692 (10th Cir.1980) ("[W]e believe that it would be in the interest of justice for the [A]BCMR to consider [appellant's] untimely application should he choose to make one.").

### D

The majority maintains that "the government's objection to venue is well taken, 28 U.S.C. § 1391 (1991), as neither the plaintiff nor defendant in the district court action are located in this judicial district. . . ." *Majority op.* at 367 n. 9. The government raised the objection for the first time after Mr. Kendall's action was transferred to the District of Columbia, and I would hold that the government waived any claim of improper venue by failing to object to the transfer beforehand in the Middle District of Pennsylvania.

Federal Rule of Civil Procedure 12(h) provides that an improper venue defense is waived if it is available but is not raised in a motion or responsive pleading. Although the venue defense was not "available" to the government at the time of its answer to the Pennsylvania complaint, the government certainly could have raised the venue issue in opposition to the magistrate's recommendation to transfer the case to Washington. To allow the government to assert an improper venue defense at this juncture, after acquiescing in the transfer to Washington, would violate both the spirit and the letter of the rule that venue objections are waivable.

## Conclusion

I would remand to the district court with instructions to remand to the ABCMR for further consideration of its decision not to entertain Mr. Kendall's application. I would also direct that in making its "interest of justice" determination, the ABCMR be instructed to consider both the merits of Mr. Kendall's claim and the possible reasons for the filing delay.