**Allen SHARP, Plaintiff,**

**v.**

**Caspar WEINBERGER, et al., Defendants.**

**Civ. A. No. 84–2277.**

United States District Court, District of Columbia.

Aug. 30, 1984.

As Amended Sept. 18, 1984.

---

Charles W. Halleck, Washington, D.C., for plaintiff.

John Oliver Birch, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff in this action challenges the validity of a Department of Defense regulation requiring that individuals holding Ready Reserve positions in the military be transferred to Standby Reserve or certain other positions if, in their civilian capacities, they hold "key" positions of employment in the federal government. Plaintiff is a federal district judge in Indiana who is also—at the present time—an officer in the Air Force Ready Reserve. The Air Force has notified plaintiff of his imminent transfer to Standby Reserve pursuant to the above-mentioned regulation, and has indicated to the Court that it plans to effect the transfer on September 1, 1984. Defendant seeks declaratory relief under 28 U.S.C. §§ 2201, 2202, and injunctive relief under F.R.Civ.P. 65 barring the Air Force from effecting the transfer. The matter is presently before the Court on defendant's motion to dismiss for failure to state a claim upon which relief can be, granted under F.R.Civ.P. 12(b)(6).

### I.

On a motion to dismiss for failure to state a claim, the facts alleged by the plaintiff must be taken as true. According to the complaint and supporting memorandum, plaintiff has been an officer in the Air Force Ready Reserve continuously since June 2, 1969. He currently holds the rank of Lieutenant-Colonel and serves in the capacity of Staff Judge Advocate of the 434th Tactical Fighter Wing at Grissom Air Force Base, Indiana. Since November 1, 1973, plaintiff has also held a commission under Article III of the Constitution of the United States as a Judge of the United States District Court for the Northern District of Indiana.

Plaintiff signed his most recent "Ready Reserve Service Agreement" on April 6, 1983. That agreement reads, in pertinent part:

I agree to be a member of the Ready Reserve until 31 Aug 86. I certify that as a member of the Ready Reserve until this date, I am and will remain immediately available for Presidential mobilization and for any reason other than medical or administrative disqualification before expiration of this agreement, I will be retained in the Ready Reserve and assigned to the ready reinforcement personnel section where I will continue to be available for mobilization if the President declares a national emergency.

Thereafter, on April 6, 1984, the Department of Defense issued DoD Directive 1200.7, which addressed, *inter alia,* the need to ensure that members of the Ready Reserve would be immediately available for active duty in the event of a mobilization. *See* Memorandum in Support of Plaintiff's Complaint, Exhibit 2. The Directive, in pertinent part, aims "to preclude conflicts between emergency manpower needs of civilian activities and the military during a mobilization." *Id.,* Exhibit 2, at ¶ E.2.a. The Directive expressly requires that:

[t]o ensure that federal employees essential to the continuity of the federal government are not retained as members of the Ready Reserve ... [t]he Military Department Secretaries shall transfer Ready Reservists occupying key positions to Standby Reserve or the Retired Reserve, or shall discharge them, as appropriate, under 10 U.S.C. 271(b)[ ].

*Id.,* Exhibit 2, at ¶¶ E.2.b–E.2.b.1. The Directive indicates that certain federal positions "are, by definition, key positions," and it lists federal district judges as falling within this category. *Id.,* Exhibit 2, at 2–1, ¶¶ 5, 5(b).

By a letter dated June 11, 1984, the Air Force notified plaintiff of his imminent transfer to the Standby Reserve pursuant to DoD Directive 1200.7. Plaintiff, who had previously sent a lengthy correspondence to the Air Force contesting the validity of any transfer to the Standby Reserve due to his federal judgeship, requested a delay of the transfer so as to prepare a waiver to be submitted to the Secretary of Defense. By letter dated July 2, 1984, the Air Force explained that plaintiff's previous correspondence had been forwarded to the Judge Advocate General of the Air Force and from there presented to the Office of the Secretary of Defense, from which a denial of a waiver was issued, and that therefore no action to forestall the transfer would be taken. *See id.,* Exhibits 1, 4, 5, 6.

Plaintiff filed this complaint on July 24, 1984. The Court has now had an opportunity to review the memoranda in support of defendant's motion to dismiss, and the opposition thereto, and for the reasons stated below, finds that the motion to dismiss must be granted.

## II.

■ Plaintiff initially claims that DoD Directive 1200.7, as applied to Ready Reserve members who are also federal employees, violates 5 U.S.C. § 5534 (1982), which states that

A Reserve of the armed forces may accept a civilian office or position under the Government of the United States ... and he is entitled to receive the pay of that office or position in addition to pay and allowances as a Reserve ...

In plaintiff's view, reserve personnel who simultaneously hold federal employment are, by virtue of 5 U.S.C. § 5534, protected against any "diminution of salary because of 'dual government employment.'" Memorandum in Support of Plaintiff's Complaint at 10. Plaintiff argues that transfer to the Standby Reserve will indeed cause plaintiff a loss of military pay—in that plaintiff will no longer be eligible for occasional periods of paid temporary active duty—and that therefore the Directive violates 5 U.S.C. § 5534.

Plaintiff, however, cites no cases directly on point, and misconstrues the purpose of the statutory provision. Military personnel

who are present or former *regular* members of the armed forces have long been barred under the Dual Compensation Act from earning full dual compensation as a result of dual appointment in the military and the civilian branch of the federal government. *See* 5 U.S.C. §§ 5531–5533. Courts have noted that 5 U.S.C. § 5534 clarifies that *reserve* members of the military are not subject to the same restrictions, but indeed are free to seek civilian employment in the federal government and obtain compensation therefrom without any direct offset in the military compensation to which they are otherwise entitled. *See Puglisi v. United States*, 564 F.2d 403, 405–07, 215 Ct.Cl. 86 (1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). There is no indication in either the cases or the legislative history, however, to indicate that by enacting 5 U.S.C. § 5534 or any of its predecessors Congress also intended to preclude the military from adjusting a reservist's readiness status, if deemed necessary by the military, in light of his or her civilian employment. Indeed, such an interpretation would conflict with 10 U.S.C. § 271, which expressly allows the President and the Secretaries of the armed forces to do so. The latter statutory provision explicitly allows the President to prescribe regulations to ensure that "[Reserve] members whose mobilization in an emergency would result in an extreme personal or community hardship are not retained in the Ready Reserve." 10 U.S.C. § 271(a)(5). Moreover, the provision orders the Secretary of Defense to prescribe regulations providing that "*any* member of the Ready Reserve" so designated "shall, as appropriate, be transferred to the Standby Reserve, discharged, or if such a member is eligible and applies therefore, transferred to the Retired Reserve." *Id.* § 271(b) (emphasis added). DoD Directive 1200.7, which expressly states that it is promulgated pursuant to this statutory provision, appears to be a faithful and reasonable application of this statutory command. *See* Memorandum in Support of Plaintiff's Complaint, Exhibit 2, at ¶ E.2.b.1.

Under plaintiff's interpretation of 5 U.S.C. § 5534, the Air Force would be barred from altering the mobilization status of any reservist who simultaneously held a federal job. The Court cannot accept this interpretation. In light of the lack of any explicit legislative history to support plaintiff's construction, and in light of the obvious purpose of 10 U.S.C. § 271, it is more reasonable to conclude that although 5 U.S.C. § 5534 clarified that reservists were exempted from the Dual Compensation Act, it did not go so far as to give reservists who were also federal employees an unique exemption from the military's readiness criteria.

### III.

Plaintiff also claims that his "Ready Reserve Service Agreement" constitutes a contract barring the Air Force from transferring him to the Standby Reserve. Plaintiff cites no cases directly on point, but relies primarily on *Cinciarelli v. Carter*, 662 F.2d 73 (D.C.Cir.1981), as support for his argument.

In *Cinciarelli*, the Court of Appeals of this Circuit implicitly acknowledged that a "Standard Written Agreement" granted to reserve officers pursuant to 10 U.S.C. §§ 679, 680 constituted a contract binding on the military as well as on the reserve officer. Standard Written Agreements, or SWAG's, guarantee a reserve officer entering active duty a "definitive term[ ] of active duty and ensure that the Reservist will not be released involuntarily except according to specified procedures." *Id.* at 75. The Court of Appeals explained that the legislative history of the statutory provisions mandating such SWAGs contained clear and explicit expressions of Congressional concern that reservists entering active duty must sever themselves from civilian employment and therefore can suffer considerable hardship if their active duty period is abruptly and involuntarily terminated. The Court of Appeals, thus, was able to find that SWAGs give reservists contract-like security against termination from active duty largely because Congress

had expressly explained that that was the aim of the legislation providing that SWAGs be made available.

The holding of *Cinciarelli*, however, is not applicable on the facts of the present case. *Cinciarelli* itself points out that, "[i]n the absence of a SWAG, a Reservist may be released from active duty at any time, and such a change in status is committed to the sole discretion of the President or the Secretaries of the appropriate armed service." *Id.* Plaintiff in this case does not have a SWAG. Plaintiff's arguments, instead, involve his Ready Reserve Service Agreement, and such an agreement cannot be readily treated as if it *were* a SWAG. Unlike a SWAG, a Ready Reserve Service Agreement is *not* an active duty agreement: an individual signing a Ready Reserve Service Agreement *retains* his or her civilian employment and thus is not in need of the special guarantees of security that motivated Congress to provide for SWAGs. Plaintiff, moreover, cites no analogous legislative history indicating that Ready Reserve Service Agreements were, like SWAGs, intended to be treated in strict contract terms. By contrast, courts have typically observed—as did the Court of Appeals in *Cinciarelli*—that "[a] change in status of a reserve officer is a matter committed solely to the discretion of the Secretary of the officer's branch of service or the President of the United States." *Coppedge v. Marsh*, 532 F.Supp. 423, 427 (D.Kan.1982).

Thus, the Court must conclude that in the absence of the factors that governed the outcome in *Cinciarelli*, a change in a reserve officer's status from Ready Reserve to Standby Reserve remains within the discretion of the appropriate military authorities notwithstanding the pendency of a Ready Reserve Service Agreement. Moreover, even to the extent that any contract rights do attach to such an agreement, the Ready Reserve Service Agreement signed by plaintiff itself stipulates that plaintiff's retention in the Ready Reserve would be subject to "administrative disqualification." In other words, the agreement in question expressly reserved to the Air Force the right to transfer the plaintiff from the Ready Reserve if valid administrative regulations so required. As indicated above, the Court has rejected plaintiff's claim that DoD Directive 1200.7 is invalid. Accordingly, the Court finds that plaintiff has failed to state a claim that his transfer to the Standby Reserve would breach any contract rights accruing to him by virtue of his Ready Reserve Service Agreement.

## IV.

■ Plaintiff's remaining claims similarly fail to state a claim on which relief can be granted. Plaintiff argues, for example, that his transfer to the Standby Reserve would violate his right to Due Process under the Fifth Amendment. Given that this Court has already found that plaintiff's status in the Ready Reserve is "committed solely to the discretion" of the President and the Secretary of the Air Force notwithstanding the pendency of plaintiff's Ready Reserve Service Agreement, no property interest accrues. *See Sims v. Fox*, 505 F.2d 857, 860–62 (5th Cir.1974), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975). Even to the extent that a property interest does exist, no due process violation can be demonstrated. Plaintiff has through lengthy correspondence presented his views on such a transfer to his superiors, has received notice of the transfer decision prior to the date on which it was to be effected, and was given adequate reasons therefore. The Court does not discount the value to the plaintiff of the private interest at stake in this matter. However, the application of DoD Directive 1200.7 to federal judges is extremely straightforward, and therefore the likelihood that additional process would correct any "error" in that application is slim. Moreover, the potential cost of hindering the Air Force from efficiently applying regulations pertinent to the mobilization readiness of its reserves is considerable. Balancing these factors as the Court is required to do, *see Mathews v. Eldridge*, 424 U.S. 319, 335–349, 96 S.Ct. 893, 903–910, 47

L.Ed.2d 18 (1976), the Court finds that Due Process does not require any more administrative process than has already been provided. *See also O'Mara v. Zebrowski,* 447 F.2d 1085, 1089–90 (3d Cir.1971).

 Plaintiff next claims that the enforcement of DoD Directive 1200.7 against him constitutes a denial of equal protection. However, no suspect classification or fundamental right is at issue, and thus strict scrutiny is inappropriate. Considering the purpose and effect of the Directive, as discussed above, under the "rational basis" test, the Court cannot find that the Directive is an irrational one. Plaintiff complains that similarly situated Ready Reserve Officers were, prior to the issuance of DoD Directive 1200.7, allowed to remain in the Ready Reserve. Air Force practice *prior* to the Directive, however, is simply irrelevant in evaluating the validity of the application of the Directive itself. Plaintiff further alleges that other similarly situated Ready Reserve Officers presently in the military have not yet been threatened with transfer to the Standby Reserve, though defendant disputes this factual assertion. Even assuming plaintiff's allegations on this score to be true, the "rational basis" test is a very lenient one, and courts must be particularly cautious in evaluating the internal operations of the military, *see Orloff v. Willoughby,* 345 U.S. 83, 93–95, 73 S.Ct. 534, 539–541, 97 L.Ed. 842 (1953). The Court is reluctant to find that the various branches and subdivisions of the military must implement this three-and-a-half month old Directive simultaneously with each other and simultaneously against every potential subject of the Directive or be found to have acted so irrationally as to have violated the Equal Protection Clause of the Constitution. The Court concludes that plaintiff's allegations simply fail to state a claim that the Equal Protection Clause has been violated.

 Finally, plaintiff claims that because the Air Force acquiesced in his civilian employment as a federal district judge up until the issuance of DoD Directive 1200.7, it has essentially waived the right to apply against him any regulation requiring that he be transferred for that reason. Plaintiff cites *Cinciarelli v. Reagan,* 729 F.2d 801 (D.C.Cir.1984) in support of his argument. The Court of Appeals in that case stated that

> when, in the course of making an agreement, an official with power to waive a regulation that would bar the agreement acts in a way that signals to a private party an objective intent to waive the regulation, and the private party relies on that behavior, the government is estopped from voiding the agreement on the basis of the regulation.

*Id.* at 807–08. It should be obvious that on April 6, 1983—the time of the "making" of the plaintiff's most recent Ready Reserve Service Agreement—DoD Directive 1200.7 had not yet even been issued, much less subject to waiver. Even if the Air Force by its prior course of conduct waived the right to apply even subsequently-promulgated regulations against the plaintiff, the Air Force's authority to do so extended only to Air Force regulations. The Air Force has no authority to waive a Directive of the Department of Defense. Thus, the Air Force could not have waived DoD Directive 1200.7, and indeed, the Department of Defense, when made aware of plaintiff's objection to a transfer, expressly denied a waiver. *Cinciarelli v. Reagan, supra,* provides no support for plaintiff's argument. Accordingly, the Court holds that plaintiff has failed to state a claim on waiver grounds.

## V.

For the reasons set forth above, the Court finds that plaintiff has failed to state a claim on any of the grounds he has advanced. Accordingly, an accompanying Order will deny plaintiff's request for injunctive relief and will grant defendant's motion to dismiss.