**Gilbert ORTIZ, Jr., et al., Plaintiffs,**

v.

**SECRETARY OF DEFENSE, et al., Defendants.**

Civ. A. No. 92–2764.

United States District Court, District of Columbia.

Dec. 14, 1993.

**8**

Gershon Michael Ratner, National Veterans Legal Services Project, Kenneth J. Nunnenkamp, Michael L. Leetzow, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for plaintiffs.

Michael Ambrosino, U.S. Attys. Office, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Plaintiffs Gilbert Ortiz and Nollie Plowman are two former soldiers who have brought this action to challenge the decision of the Army Board for Correction of Military Records ("ABCMR") denying their applications for upgrade of their discharges from "other than honorable" to "honorable". The ABCMR denied plaintiffs' applications because they were not filed within the time specified by statute and because plaintiffs failed to demonstrate that it was in the interest of justice to excuse their failure to file timely applications. This action is brought under the Administrative Procedure Act and the United States Constitution.

The complaint contains three counts. Count I challenges the denial of the discharge upgrade for lack of timeliness as arbitrary, capricious and contrary to law because Plaintiffs filed within the statutory limitations period. Count II alleges that even if the statute of limitations were not met, the decision not to waive the statute of limitations in "the interest of justice" was arbitrary and capricious because the ABCMR failed to evaluate and justify its decisions with regard to the merits of plaintiff's claims. Count III challenges the denial of upgrades on equal protection grounds, arguing that Army veterans are treated differently than Navy and Air Force veterans by their respective BCMRs.

The Court has before it defendant's Motion to Dismiss or in the Alternative for Summary Judgment, and plaintiffs' Cross Motion for Summary Judgment.

### I. Facts

The following facts are undisputed:

*Gilbert Ortiz*

Plaintiff Gilbert Ortiz entered the United States Army on November 7, 1966. During the time Ortiz was in the Army, he was repeatedly absent without leave ("AWOL") and accrued 913 days lost time due to AWOL and confinement. He was convicted twice by summary court-martial and once by special court-martial for AWOL. These proceedings resulted in reductions in grade and hard labor and a period of confinement. Ortiz' commander recommended that he be administratively removed from the service for reasons of unfitness. Informed of the serious

consequences that might result from his contemplated separation from the service, Ortiz waived consideration of his case by a board of officers. He also waived representation by appointed counsel and the right to submit statements on his own behalf. On March 27, 1970, Ortiz was discharged from the Army with a discharge under other than honorable conditions. Ortiz was credited with 10 months, 21 days active service.

On August 24, 1984, within 15 years of his date of discharge, Ortiz applied to the Army Discharge Review Board ("ADRB") for an upgrade of his discharge. Mr. Ortiz argued that his post-discharge conduct combined with his immaturity at the time of his service warranted an upgrade of his discharge classification to general/under honorable conditions. His application to the ADRB was denied on June 18, 1985. Upon denial by the ADRB, Ortiz was informed that he had the right to apply for consideration with the ABCMR.

On July 3, 1985 Ortiz applied to the ABCMR for an upgrade of his discharge. Mr. Ortiz listed the following as reasons why the Board should find it in the interest of justice to consider his untimely filed application:

> I have maintained gainful employment and the erradic [sic] behavior demonstrated during the Army no longer exists as my personal problems have been resolved.

*Administrative Record I* at 16. The ABCMR denied Ortiz' application on December 10, 1986. The Board's justification for denying the Mr. Ortiz' application was as follows:

> The alleged error or injustice was, or with reasonable diligence should have been, discovered on 27 March 1970. The time for the applicant to file a request for correction of any error or injustice expired on 27 March 1973. The subject application was not submitted within the time required. The applicant has not presented, nor do the records contain, sufficient justification to establish that it would be in the

interest of justice to excuse the failure to file within the time prescribed by law.

*Administrative Record I* at 2.

### Nollie Plowman

Plaintiff Nollie Plowman entered into active service with the United States Army on September 13, 1974. After completing his training, Plowman received non-judicial punishment for failing to report to his place of duty. Despite this initial infraction, Plowman was subsequently promoted, achieving the rank of SP-4 by May, 1976. On June 4, 1976, Plowman was given non-judicial punishment for failing to appear at the appointed time on guard duty and for being incapacitated for duty resulting from a previous "indulgence" of alcohol. Plowman was fined and reduced in grade from SP-4 to Private First Class. On July 30, 1976, Mr. Plowman received non-judicial punishment for being AWOL from July 9 through July 14. Mr. Plowman was placed under restriction, fined, given extra duty and reduced from Private First Class to Private E-2. Plowman again received non-judicial punishment on September 16, 1976 for being AWOL from September 6 through September 8. This infraction caused Mr. Plowman again to be placed on restriction, to be given extra duty and to be reduced in grade to Private E-1.

Beginning in September 1976, Plowman was treated for drug and alcohol abuse. This treatment was apparently ineffective, as Plowman continued to go AWOL. Court-martial charges were brought against him. Plowman elected to submit a resignation in lieu of court-martial. In his resignation request, Plowman admitted that he had committed the charged offenses and was aware of the consequences of his request for resignation. He was discharged on July 21, 1977, with a classification of "Other than Honorable."

On December 21, 1983, Mr. Plowman applied to the ADRB to change the status of his discharge.[1] He referred to both a mental condition and his drug and alcohol abuse as reasons for his misconduct. On October 12,

---

1. The administrative record is unclear as to the exact date that this application was made to the

ADRB. There appears to be a "Received" stamp on the application dated "Dec. 21".

1984, the ADRB declined to upgrade his discharge.

On January 28, 1987, nearly nine years after his discharge from active duty, but less than three years after the ADRB denied his request for a discharge upgrade, Plowman filed an application to the ABCMR for an upgrade of his discharge. Listing the date of discovery of the alleged injustice as 1986, Plowman stated that the Board should find the consideration of the application in the interest of justice because, "mental problems was keeped [sic] in service a year after being completly [sic] busted." *Administrative Record II* at 62.

The ABCMR decided not to upgrade the status of Plowman's discharge status on August 17, 1988. In a decision similar to its decision with regard to Mr. Ortiz, the Board concluded that Mr. Plowman had not applied to it within the three year limitations period and that Plowman did not present sufficient justification to find it in the interest of justice to waive the statute of limitations.

*Count I*

■ Count I challenges the ABCMR's determination that the plaintiffs did not file their applications within the statutory period. The relevant portion of the statute which governs applications to BCMRs reads as follows: "No correction may be made ... unless the claimant ... files a request [for the correction] within three years after he discovers the error or injustice." 10 U.S.C. § 1552(b). Plaintiffs argue that the ABCMR's three-year statute of limitations period does not begin to run when the applicant is separated from the service, but instead it begins to run only once administrative remedies, specifically all applications to the ADRB, have been denied. Plaintiffs claim that while their applications for review were filed with the ABCMR more than three years after their discharges, this Court should find that the applications were properly filed because plaintiffs applied to the ABCMR within three years after denial of their claims by the ADRB.

■ Plaintiffs base their argument on two separate facts. First, under 37 C.F.R. § 581.3(c)(3) (1993) in order to apply to the ABCMR, an applicant need to have "exhausted all effective administrative remedies afforded him by existing law or regulations, and such legal remedies as the Board shall determine are practical and appropriately available to the applicant." Thus, appeal for the correction of a military discharge record normally lies first to the relevant DRB and then to the BCMR. *See Hodges v. Callaway,* 499 F.2d 417, 420 n. 7 (5th Cir.1974). The second fact on which plaintiffs base Count I is that the ADRB has a fifteen year statute of limitations while the ABCMR has a three-year statute. *Compare* 10 U.S.C. § 1553(a) (application to Discharge Review Board must be made within 15 years of date of discharge) *with* 10 U.S.C. § 1552(b) (3–year limit for boards for the correction of military records created under this statute). Plaintiffs assert that because an appeal to the ADRB is considered an administrative prerequisite to an application to the ABCMR, the ADRB's 15–year statute of limitations would be abbreviated by 12 years if an aggrieved party were required to file with the ADRB within three years in order to preserve any subsequent right of application to the ABCMR. Plaintiffs would have this Court find that no "error or injustice" within the meaning of § 1552(b) has occurred until all administrative remedies, including application to the DRB, have been exhausted.

This Court finds that the ABCMR acted neither arbitrarily nor capriciously in interpreting the "discover[y of] error or injustice" language to mean from the date of discharge. That there may exist other avenues of relief for the amendment of improper discharges besides the ABCMR does not mean that the ABCMR's 3–year statute must be subjugated to other, longer statutes found in other procedures. Plaintiff's theory runs contrary to the plain language of the statute. In *Walters v. Secretary of Defense,* 725 F.2d 107 (D.C.Cir.1983) *(rehearing denied)* the D.C. Circuit held that for purposes of the statute of limitations in discharge cases, it is perfectly proper to find that the statutory time begins to run at the time of discharge. The Court there noted that waiting until all administrative remedies are exhausted before starting the statutory time clock, "would virtually repeal the statute of limitations in a

case ... where the plaintiff has not exhausted his administrative remedies." *Id.* at 114. The same would occur in this case under plaintiffs proposed interpretation of the three-year statute in § 1552. The three-year ABCMR statute would become an 18–year statute (or more, depending on how long it takes the ADRB to make a decision) by virtue of the ADRB's 15–year statute. This is an unacceptable result under the terms of the statute.

The ABCMR's determination that the statutory time clock began to tick at the time of discharge for both plaintiffs was neither arbitrary, capricious, nor contrary to law and defendants are entitled to summary judgment on this Count.

*Count II*

██ In Count II of the complaint, plaintiffs allege that the ABCMR has failed to justify its decision not to waive the three year statute of limitations in the interest of justice. Thus, plaintiffs argue, the decision was arbitrary, capricious and contrary to law. As an initial matter, this court must address whether it has jurisdiction to review a decision that appears from the statute to be wholly committed to the ABCMR's discretion.

Arguing that the "interest of justice" language is routinely interpreted by courts, plaintiffs direct the Court's attention to the case of *Allen v. Card*, 799 F.Supp. 158 (D.D.C.1992). In *Allen*, Judge Flannery found denial of a waiver reviewable and used an "abuse of discretion" standard to review a decision of the Coast Guard BCMR not to waive the statute of limitations in the interest of justice.

Plaintiffs also devote a considerable portion of their brief to the legislative history surrounding the limitations period found in § 1552. Plaintiffs suggest that this 3–year limitations term was added to the BCMR statute specifically to address the concern of the Comptroller General regarding late filed monetary claims. Non-money claims, say the plaintiffs, were not intended to be squelched by the term limitation. Based on this legislative history, plaintiffs argue the statute was not intended to give unbridled

discretion to the Army to make the determination whether to waive the statute or not.

There is evidence from the legislative history of 10 U.S.C. § 1552 confirming plaintiffs' assertion. Initially, the Department of Defense favored no time limitation period at all on appeals to the BCMRs. The term limitation was implemented at the request of the GAO:

> When the original bill which the Department of Defense recommended was considered before the Committee on Armed Services of the House of Representatives, three specific objections were interposed by the General Accounting Office. First, the lack of any time limitation on the bill. The Department of Defense was opposed to any time limitation but withdrew its opposition if the proviso set forth in the present act ... were adopted, whereby the boards would have authority to excuse compliance with the limitation in cases where an injustice would result to a member of the armed services who, for instance, because of injury in combat, capture, participation in combat or other exigencies or military service might render it impracticable for him to file his claim within the prescribed period.

*Authorizing Payment of Claims Arising from Correction of Military and Naval Records: Hearing on H.R. 1181 Before a Subcomm. of the Senate Comm. on Armed Services*, 82nd Cong., 1st Sess. 3 (1951) (Statement of Stephen S. Jackson, Office of Counsel, Office of the Secretary of Defense). In *Mullen v. United States*, 17 Cl.Ct. 578 (1989) the Claims Court relied on this legislative history, and came to the determination that because the Congress had never intended to discourage late-filed applications for non-money claims to the BCMRs, the decision not to waive the statute in the interest of justice should be reviewable:

> It is clear from the legislative history that the waiver provision of section 1552(b) was a compromise intended to operate as a safety valve in cases where a service man was unable to file his application within three years from discovery. It provides authority to the boards to waive the three year requirement where it is in the inter-

est of justice to do so. Nowhere in the available legislative history is there any mention of unbridled discretion being placed in the boards. In fact, the general tone of the reports indicates that the boards should waive the requirement when an injustice is present.

*Id.* at 582. Thus, plaintiffs argue, the decision by a BCMR not to waive the statute of limitations should not be seen as wholly within the agency's discretion; such a decision should be reviewed as any other agency decision under the appropriate provision of the Administrative Procedures Act:

Other precedent suggests a contrary conclusion. In *Ballenger v. Marsh,* 708 F.2d 349 (8th Cir.1983), the 8th Circuit addressed this same issue. The Court there found that a decision of the ABCMR not to review an untimely application was not "an appropriate decision for review by a federal court." *Id.* at 351. Citing *Ballenger,* the D.C. Circuit has noted that "[T]he decision to grant an exception to an applicant appears to be wholly within the Board's discretion." *Kendall v. Army Bd. for Correction of Military Records,* 996 F.2d 362, 367 at n. 8. (D.C.Cir. 1993).

To this Court it appears that the decision whether to waive the statute of limitations in the interest of justice is completely within the Board's discretion. The statutory limitations period governing BCMR review states, "However, a [BCMR] *may excuse* a failure to file within three years after discovery *if it finds it to be in the interest of justice.*" 10 U.S.C. § 1552(b) (emphasis added). The provision on its face makes clear that the determination of whether to excuse late filing lies exclusively with *the Board.* Even then, the language is "may excuse", not "shall excuse". No standards for review are suggested. This Court believes that the statute of limitations found in § 1552 serves a legitimate purpose for both monetary and non-monetary claims. While the statute may provide a "safety valve" for instances when it would be inequitable for a military record to remain uncorrected, control of this "safety valve" was placed by Congress in the hands of the BCMRs.

■ Even if the ABCMR's decision not to waive the statute were reviewable, plaintiffs would obtain no relief. If reviewable, the applicable standard would be whether the action of the military agency "conforms to the law, or is instead arbitrary, capricious or contrary to statutes and regulations governing that agency." *Kendall,* 996 F.2d at 367 (citing *Ridgely v. Marsh,* 866 F.2d 1526, 1528 (D.C.Cir.1989). This Court finds that neither plaintiff has presented sufficient evidence to demonstrate it would be in the interest of justice to excuse the failure to timely file his appeal. Mr. Ortiz' and Mr. Plowman's abbreviated descriptions of the personal problems which caused them to be dismissed from the military do not help to explain why they failed to file with the ABCMR within the applicable limitations period or why it would be unjust not to upgrade their discharges. This Court finds the decisions of the ABCMR neither arbitrary nor capricious given the inadequate bases for relief put forward by plaintiffs.

The Court feels compelled to engage in this discussion because of the Court of Appeals' *Kendall* decision. The *Kendall* majority, while asserting in a footnote that the decision not to waive the statute of limitations is wholly within the agency's discretion, proceeded to address the merits of Kendall's claim nonetheless. The dissent also addressed Kendall's claim on the merits. Because of this mixed message, the Court will find as an alternative holding that the ABCMR's determination that it would not be in the interest of justice to waive the statute was not an abuse of discretion. Summary judgment will be granted in favor of the defendant on Count II.

*Count III*

In Count III, plaintiffs allege that because the Army Board treats discharge cases differently from similar boards in the Navy and Air Force, plaintiffs' Due Process and Equal Protection rights have been violated. Plaintiffs allege that when considering similar claims, the Navy and Air Force Boards for the Correction of Military Records routinely examine the merits of an applicant's case to determine whether waiving the statute of limitations period would serve justice. In

contrast to the practice of the Navy and Air Force Boards, plaintiffs claim that the Army Board does not look to the merits of the application when deciding whether to waive the application in the interest of justice. Plaintiffs argue that as a result, Army veterans are routinely discriminated against relative to Navy and Air Force veterans in violation of the 5th and 14th amendments to the United States Constitution. Under Count III, Plaintiffs ask for broad discovery of Army, Navy, and Air Force records in order to confirm that the Army irrationally interprets the law in a substantially different fashion than the other armed services to the detriment of Army veterans.

■■ The Court believes that even if plaintiffs' allegations are accurate, they fail to state a claim for which relief can be granted. The application for upgrade of a military discharge does not involve a fundamental right and Army veterans do not constitute a suspect class. As a result, the system of correction boards will survive an equal protection attack so long as the challenged classification is "rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988).

10 U.S.C. § 1552 authorizes separate correction boards for different branches of the military. This allocation of review of records between the services can be justified in any number of ways. Most obviously, it is perfectly rational that the circumstances of an Army veteran requesting a review of his or her records be judged by Army appointees who may be more familiar with the specific circumstances of Army veterans compared to Coast Guard, Navy, or Air Force veterans. The challenged procedure must be viewed as rationally related to a legitimate government purpose.

The assertion that two different services interpret the same legislative language in lawful, albeit substantially different ways (which this Court must take to be true for purposes of a motion to dismiss) does not make an equal protection violation. The Equal Protection Clause does not warrant a calculus by this Court of the lowest common denominator from among the services and mandate its imposition on the rest. As has been noted by another judge of this Court, "Each branch is entitled to manage its internal operations as it sees fit without subjecting itself to an equal protection suit because another branch has adopted a different approach in the management or discipline of its personnel." *Vietnam Veterans of America v. Secretary of Navy*, 741 F.Supp. 1, 5 (D.D.C. 1990). The Court in *Vietnam Veterans* rejected an equal protection claim when confronted with evidence that one branch of the armed services treated drug users more harshly than other branches. Noting that courts must be particularly cautious in evaluating the internal operations of the military, the Court called the discrepancy in treatment by one branch "a rational exercise of its discretion." *Id.* at 14. *See also, Poindexter v. United States*, 777 F.2d 231, 236 & n. 5 (5th Cir.1985) (rejecting claim that the Army was violating equal protection and due process by requiring proof of negligence for recovery under Military Claims Act, while other services did not require proof of negligence); *Sharp v. Weinberger*, 593 F.Supp. 886, 891 (D.D.C.1984) (no equal protection violation where all services did not implement a Department of Defense directive in a similar fashion).

■ The cases cited by plaintiffs are inapposite. Most involve regulations or laws written by a *single* civil legislative body to discriminate between two groups for indefensible reasons. This case challenges differing interpretations of a statute by *different* decision-making bodies. Just as two different judges may sometimes view the same facts and, in their discretion, come to different conclusions without violating the Equal Protection Clause, the various BCMRs may read § 1552 differently without denying equal protection. Plaintiffs can point to no case where similar inter-service disparities have been found to be the basis for an equal protection claim. Defendants' motion to dismiss on Count III must be granted.

An appropriate order accompanies this opinion.

*ORDER*

Upon consideration of defendant's Motion for Summary Judgment, plaintiffs' Opposition and Cross–Motion for Summary Judgment, oral argument, and for the reasons stated in the foregoing memorandum opinion, it is hereby

**ORDERED** that summary judgment be granted in favor of the defendants on Count I of the complaint; and it is further

**ORDERED** that summary judgment be granted in favor of the defendants on Count II of the complaint; and it is further

**ORDERED** that Count III of the complaint be dismissed.