**Gilbert ORTIZ, Jr.; Nollie Plowman, Appellants,**

v.

**SECRETARY OF DEFENSE; Secretary of the Army, Appellees.**

No. 94–5026.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 6, 1994.

Decided Dec. 6, 1994.

As Amended Dec. 7, 1994.

Joseph R. Guerra, Washington, DC, argued the cause for appellants. With him on the briefs were Ronald S. Flagg, Donald H. Smith and Gershon M. Ratner, Washington, DC.

Michael T. Ambrosino, Asst. U.S. Atty., Washington, DC, argued the cause for appellees. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

Before: WALD, SENTELLE, and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The Army Board for the Correction of Military Records is a board composed of civilians that processes servicemembers' claims regarding alleged errors or injustices in their military records. By statute, the Correction Board resolves those claims made "within three years after [the servicemember] discovers the error or injustice." 10 U.S.C. § 1552(b). These appeals require the court to decide whether, when a former servicemember seeks to upgrade a discharge, the three-year limitation period begins to run from the date of discharge or from the time the servicemember exhausts remedies before the Army Discharge Review Board, which reviews only dismissals and discharges. *See* 10 U.S.C. § 1553. We hold, in view of the regulatory requirement that servicemembers exhaust their remedies with the Review Board before they seek redress from the Correction Board, that the three-year statute of limitations begins to run at the conclusion of Review Board proceedings. Accordingly, we reverse the grant of summary judgment to the Secretaries of Defense and the Army.

## I.

Appellants Gilbert Ortiz, Jr. and Nollie Plowman principally contend that the district court erred in ruling that the three-year statute of limitations began to run from the dates of their discharges, rather than from the dates of the Review Board's denials of their applications. After their discharges under other than honorable conditions, both appellants filed timely applications with the Review Board for upgraded discharges. Within three years after the Review Board denied them relief, they both filed applications for upgraded discharges with the Correction Board. In each instance the Correction Board denied their applications as untimely, because more than three years had elapsed since their discharges, and declined to consider the merits of their applications in the "interest of justice." *Ortiz v. Secretary of Defense*, 842 F.Supp. 7 (D.D.C.1993).[1] Thereafter, appellants sued the Secretary of the Army and the Secretary of Defense, alleging that the Correction Board's decisions were arbitrary, capricious, abuses of discretion, and contrary to law. The district court granted summary judgment in favor of the Secretaries, and appellants appeal.

Applications before the Correction Board to correct an error or injustice must be filed "within three years after [the former servicemember] discovers the error or injustice." 10 U.S.C. § 1552(b) (Supp. V 1993). Appellants maintain that the district court erred in two respects in ruling that the Correction Board properly interpreted the phrase "discover[y] [of] error or injustice" in § 1552(b) to mean "the date of the discharge," a phrase Congress used in § 1553(a) in providing a time limit for Review Board applications.[2] First, this construction of § 1552(b), appellants argue, is inconsistent with the plain language, structure and legislative history of the statute. Second, they continue, it cannot be reconciled with the Army's two-step administrative review procedure, which requires former servicemembers to exhaust their administrative remedies with the Review Board before seeking redress from the Correction Board.

The Secretaries respond that the three-year filing requirement in § 1552(b) is clear and unambiguous, that the errors or injustices appellants challenge are their original discharges, and that none of the relevant statutes or their legislative histories demonstrate a congressional intent to require ex-

1. Ortiz's career in the Army ended with a discharge under other than honorable conditions on March 27, 1970. During his tenure in the military, Ortiz was absent without leave on three occasions and punished for theft, thereby accruing 912 days of absence in fewer than four years of service. On September 4, 1984, Ortiz filed a timely application with the Discharge Review Board to upgrade his discharge to general/under honorable conditions. After the Review Board denied his application on June 16, 1985, Ortiz filed an application on July 12, 1985 with the Board for the Correction of Military Records to upgrade his discharge. On the Correction Board application form, Ortiz indicated that the discovery of the alleged error or injustice took place on March 27, 1970, the date of his discharge, and that it was in the interest of justice to review his application despite the passage of more than three years because he had personal problems while in the Army which had been subsequently resolved—the same reason he gave for requesting a discharge upgrade in the first instance. The Correction Board denied the application as untimely, finding that "[t]he alleged error or injustice was, or with reasonable diligence should have been, discovered on 27 March 1970 [the date of discharge]," and declined to address his application in the "interest of justice."

Plowman's history with the Army is similar. He was discharged under other than honorable conditions on July 21, 1977, for repeated instances of failing to appear at appointed place of duty and being absent without leave, which resulted in the accumulation of five months lost time. On December 21, 1983, Plowman filed a timely application with the Discharge Review Board to upgrade his discharge to general/under honorable conditions. After his application was denied on October 31, 1984, he filed an application for a discharge upgrade from the Correction Board on February 3, 1987. Plowman's application stated that he had discovered the error or injustice in 1986, and that it was in the interest of justice to review his application because of mental problems that he had suffered while in the service but that had only been diagnosed after his discharge. The Correction Board denied Plowman's application for the same reasons it denied Ortiz's application.

2. 10 U.S.C. § 1553(a) (1988) provides that "[a] motion or request for review must be made within 15 years after the date of the discharge or dismissal."

haustion of Review Board remedies before applying to the Correction Board. Although the Secretaries concede that their regulations require exhaustion of certain remedies before recourse to the Correction Board, they maintain that such exhaustion is required only when the Correction Board determines that it is practical and appropriate. The Secretaries agree that our review of when the Correction Board's three-year statute of limitations begins to run is *de novo*, *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 614 (D.C.Cir.1992), and applying that standard, we respectfully disagree with their interpretation in view of the plain meaning of the Army's regulation requiring exhaustion.

## II.

Congress has enacted statutes providing at least two administrative procedures by which a former servicemember may seek an upgrade of his or her discharge. First, 10 U.S.C. § 1552 authorizes the Secretary of the Army, acting through boards of civilians, to correct military records. Under subsection (b):

No correction may be made ... unless the claimant ... files a request for the correction within three years after he discovers the error or injustice. However, [the Correction Board] may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

10 U.S.C. § 1552(b). Second, 10 U.S.C. § 1553(a) authorizes the Secretary to establish a Review Board, consisting of five members, to review dismissals and discharges, provided that "[a] motion or request for review [is] made within 15 years after the date of the discharge or dismissal." Subsection (c) requires the review to be based on the military records and any evidence presented by the applicant to the Review Board; applicants may present witnesses and appear personally or through counsel. *Id.* § 1553(c).

In providing these two avenues of administrative review, however, Congress did not indicate the relationship between them. Neither statute provides that one avenue must be pursued before the other. Remedying this lack of clarity, the Army promulgated a

regulation requiring exhaustion of Review Board procedures before an application to the Correction Board will be considered. The regulation provides:

*Exhaustion of other remedies.* No application will be considered [by the Correction Board] until the applicant has exhausted all effective administrative remedies afforded him by existing law or regulations, and such legal remedies as the [Correction] Board shall determine are practical and appropriately available to the applicant.

32 C.F.R. § 581.3(c)(3) (1994).

### A.

In maintaining that the district court erred in equating the date of discovery with the date of discharge, appellants first point to the different language used by Congress in §§ 1552(b) and 1553(a). Congress required, in setting the time for applications to be submitted to the Review Board, that applications shall be made within "15 years after the *date of discharge....*" 10 U.S.C. § 1553(a). Congress included no such language in § 1552(b), requiring instead that applications to the Correction Board shall be made within three years after the servicemember "discovers the error or injustice." Appellants argue that, in the absence of further guidance from the statutory language itself, the different language in two companion provisions demonstrates that discovery of the "error or injustice" means something other than "date of discharge." *See Energy Research Found. v. Defense Nuclear Facilities Safety Bd.*, 917 F.2d 581, 583 (D.C.Cir.1990) ("'when [Congress] employs different words, it usually means different things'") (quoting Henry J. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes in* BENCHMARKS 224 (1967)); *Association of Maximum Service Telecasters v. FCC*, 853 F.2d 973, 978 (D.C.Cir.1988) ("interpretive significance should be drawn from Congress' use of two different words"). However, this ignores the broader scope of the Correction Board's authority to correct any military record as compared to that of the Review Board, which is limited to review of dismissals and discharges.

Still, appellants' position finds some support in the legislative history; a sponsor of the bill stated that the three-year period did not necessarily begin to run from the date of discharge but rather from the date of discovery of the error.[3] However, this history indicates only that the date of discovery of the error may be different from the date of discharge, not that it will always, or even often, be different. Nonetheless, appellants argue, in light of the legislative history and the fact that the Review Board has authority to provide relief to applicants such as appellants, that there is no final "error or injustice" until the Review Board has acted. Therefore, appellants contend that the most natural and appropriate interpretation of § 1552(b) is that the limitations period for appellants began to run on the date that the Review Board denied their applications to reclassify their discharges.

The Secretaries' response is that the three-year language of § 1552(b) is clear and unambiguous. We disagree with both parties. Although the language differences relied on by appellants are not dispositive of the issue before us, appellants have demonstrated at least that the use of different language creates uncertainty about the triggering event for the Correction Board's three-year statute of limitations and clearly does not rule out a triggering event other than a discharge. Indeed, the Secretaries acknowledge that the Correction Board's statute of limitations "does not run from a uniform date, but rather depends on the error or injustice being challenged and the date that particular error or injustice was discovered." *See Mullen v. United States,* 19 Cl.Ct. 550, 551 (1990) (three-year limitation period in discharge case began to run when former servicemember was diagnosed with psychiatric disorder over ten years after discharge).

## B.

Appellants more persuasively maintain that the Secretaries' interpretation of

§ 1552(b), as reflected in the decisions of the Correction Board here, cannot be reconciled with the exhaustion requirement of 32 C.F.R. § 581.3(c)(3). The Army, of course, is bound to follow its own regulations, *Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954); *Blassingame v. Secretary of Navy,* 866 F.2d 556, 560 (2d Cir.1989), and it has acted to inform applicants, including appellants, about the exhaustion requirement.[4] It is undisputed that an application to the Review Board was an effective administrative scheme for receiving the relief appellants sought which was afforded by law throughout the relevant time period. Under the plain meaning of the Army's regulation, 32 C.F.R. § 581.3(c)(3), the Correction Board required, as a prerequisite to its consideration of an application, exhaustion of remedies before the Review Board. *Cf. Muse v. United States,* 13 Cl.Ct. 372, 382 (1987) (pursuit of remedies before the Army's Special Review Board, when available, is a prerequisite to applying for relief from the Correction Board).

This requirement does not conflict with the Correction Board's statute, 10 U.S.C. § 1552, which is silent on the question of exhaustion. *Cf. McCarthy v. Madigan,* 503 U.S. 140, 147, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992) (noting that in the context of civil actions, "where Congress has not clearly required exhaustion, sound judicial discretion governs"). Furthermore, requiring exhaustion here is consistent with the hierarchy of administrative boards established by Congress and gives the Review Board, staffed with military personnel who are positioned to conduct a factual inquiry, a first opportunity to correct any error or injustice before allowing consideration by the Correction Board, a panel of civilians. *Sherengos v. Seamans,* 449 F.2d 333, 334 (4th Cir.1971) ("Located as

---

3. *Hearings on Sundry Legislation Affecting the Naval and Military Establishments Before the Committee on Armed Services of the House of Representatives, No. 21: Full Committee Hearing on H.R. 662 and Accompanying Bills,* 82d Cong., 1st Sess. 425, 447–49 (1951).

4. When the Review Board denied appellants' applications, it sent them identical form letters stating that "[i]f all appeals with the Army Discharge Review Board have been exhausted, you may file an appeal for consideration with the Army Board for Correction of Military Records."

it is at the apex of a pyramidal system of specialized boards of review, the Board for Correction of Military Records cannot function effectively if the specialized military boards are bypassed and it is used as a forum for presenting complaints in the first instance."); *Muse*, 13 Cl.Ct. at 382 (same); *see McCarthy v. Madigan*, 503 U.S. 140, 147, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992) (noting that "[e]xhaustion concerns apply with particular force" when a less expert body requires exhaustion of remedies before the more expert body); *McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (same). Although we have found no direct holding on the requirement of exhaustion of remedies before the Review Board, this requirement is reflected in the opinions of this and other courts. *See Bolger v. Marshall*, 193 F.2d 37, 39 & n. 3 (D.C.Cir.1951) (noting with approval that the Correction Board had refused to consider an application because the applicant had not exhausted her remedies with a precursor to the Review Board) (dictum);[5] *Bittner v. Secretary of Defense*, 625 F.Supp. 1022, 1026–27 (D.D.C.1985) (noting that the proper course for a servicemember aggrieved by discharge is first to pursue claims before the Review Board, and only if unsuccessful there, to apply to the Correction Board); *see also Blassingame*, 866 F.2d at 558 n. 3; *Blassingame v. Secretary of Navy*, 811 F.2d 65, 71 (2d Cir.1987); *Geyen v. Marsh*, 775 F.2d 1303, 1309 (5th Cir.1985); *Hodges v. Callaway*, 499 F.2d 417, 420 n. 7 (5th Cir.1974).[6]

The Secretaries' contrary argument, that exhaustion is required under the regulation only when the Correction Board determines it is practical and appropriate, is not supported by the language of the regulation. The regulation refers to two types of remedies which are joined by the conjunction "and" and therefore must both be exhausted before the Correction Board will consider an application. One category encompasses "such legal remedies as the [Correction] Board shall determine are practical and appropriately available," 32 C.F.R. § 581.3(c)(3), as the Secretaries argue, but the other, independent category includes "*all* effective administrative remedies afforded ... by existing law or regulations," *id.* (emphasis added), a category which undeniably includes Review Board action. Notwithstanding the deference owed to an agency's interpretation of its own regulations, the Secretaries' interpretation is plainly erroneous and inconsistent with the regulation. *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

Likewise, the Secretaries' reliance on the 1951 legislative history of the three-year statute of limitations in § 1552(b) will not sustain the weight it is asked to bear. By the Secretaries' own admissions, the General Accounting Office's concern about the impact on the treasury of the Correction Board's consideration of stale claims, including at least one arising from the Spanish American War,[7] does not indicate that Congress did not intend for the Army to be able to require exhaustion. To the contrary, the statute of limitations compromised the GAO's desire for rapid resolution with competing interests. Most notably, because the military objected to the three-year limitation as being too short, the statute allowed the Correction

---

**5.** The Secretaries' attempt to differentiate *Bolger* because it did not address a timeliness question is unavailing. *Bolger* and the other cases cited imply that the exhaustion regulation, § 581.3(c)(3), requires exhaustion of remedies with the Review Board before filing an application with the Correction Board. The Secretaries do not claim that any timeliness-related exception to this rule exists, and we are aware of none.

**6.** In *Vietnam Veterans v. Secretary of the Navy*, 843 F.2d 528, 531 (D.C.Cir.1988), this court suggested in passing that discharges are reviewable by either or both the Review Board and the Corrections Board. However, even the indeci-

sive language in *Vietnam Veterans* and the case upon which it relies, *Strang v. Marsh*, 602 F.Supp. 1565 (D.R.I.1985), imply only that exhaustion is not required when the Review Board lacks the power to provide the relief sought. *See Hodges*, 499 F.2d at 420 n. 7.

**7.** *Hearings on Sundry Legislation Affecting the Naval and Military Establishments Before the Committee on Armed Services of the House of Representatives, No. 27: Full Committee Hearings on H.R. 4111 and Accompanying Bills*, 82d Cong., 1st Sess. 593, 602 (1951).

Board to waive the timeliness requirement.[8] In addition, the statute created a ten-year grace period before the three-year limitation was enforced.[9] Thus Congress did not consider the need for timeliness to be paramount, but rather secondary to fairness. In any event, the language of § 1552(b) leaves open what is the triggering event for commencement of the three-year statute of limitations.

We hold that because the Army's regulation requires exhaustion of Review Board remedies before the Correction Board will consider an application, the Correction Board's three-year statute of limitations does not begin to run at the time of discharge where, as here, servicemembers timely pursue remedies before the Review Board. The Correction Board occupies a position analogous to that of a court applying a statute of limitations to an action that cannot be brought until administrative remedies are exhausted. In that context, this court has held that "a suit cannot be maintained in court— and a cause of action does not 'first accrue'— until a party has exhausted all administrative remedies whose exhaustion is a prerequisite to suit." *Spannaus v. United States Dept. of Justice,* 824 F.2d 52, 56–57 (D.C.Cir.1987); *see id.* at 56 n. 3 ("That a statute of limitations cannot begin to run against a plaintiff *before* the plaintiff can maintain a suit in court seems virtually axiomatic."). Although *Spannaus* is not controlling because it involved the interpretation of a different statutory limitations period, its logic is unassailable: a statute of limitations will not normally begin to run until a party has acquired the right to initiate the proceeding covered by the limitations period.

The Supreme Court reached a similar conclusion in determining whether the six-year statute of limitations on a contract-related claim against the government began running at the time of the completion of the contract or at the time of action by an administrative board whose ruling was a prerequisite to suit. In *Crown Coat Front Co. v. United States,* 386 U.S. 503, 514, 87 S.Ct. 1177, 1183,

18 L.Ed.2d 256 (1967), the Court explained that:

> [t]o hold that the six-year time period runs from the completion of the contract, as the Government insists, would have unfortunate impact. The contractor is compelled to resort to administrative proceedings which may be protracted and which may last not only beyond the completion of the contract but continue for more than six years thereafter. If the time bar starts running from the completion date, the contractor could thus be barred from the courts by the time his administrative appeal is finally decided.... This is not an appealing result, nor, in our view, one that Congress intended.... [I]t is very doubtful that it anticipated no review at all if administrative proceedings, compulsory on the contractor, continued for more than six years beyond the contract's completion date.

The same reasoning applies here. If the three-year statute of limitations starts running from the date of discharge, former servicemembers could be barred from obtaining relief from the Correction Board by the time the Review Board acted on their applications, which need not be filed for fifteen years after discharge. The only reasonable conclusion is that the limitation period begins when the applicant fulfills all prerequisites to bringing an application before the Correction Board, *i.e.,* when the Review Board renders its decision. Although the court has not squarely addressed this issue before, our previous statements in this area and the opinions of at least two other circuits concur with the result we reach today. *See Van Bourg v. Nitze,* 388 F.2d 557, 565 (D.C.Cir.1967) (stating that Congress established "a 15 year period in which to seek reconsideration of the nature of a discharge before the Review Board, and a period of 3 years thereafter to seek review before the Correction Board when that avenue of review is also available") (dictum); *Blassingame v. Secretary of Navy,* 811 F.2d 65, 71 (2d Cir.1987) (applicant may apply to Correction Board within three years of a decision by the Review Board) (dictum);

---

**8.** 10 U.S.C. § 1552(b); *see Hearings, supra* note 7, at 601.

**9.** 10 U.S.C. § 1552(b) (1982) (amended 1988); *see Hearings, supra* note 7, at 602.

*Geyen v. Marsh,* 775 F.2d 1303, 1309 (5th Cir.1985) (noting that even more than six years after discharge, a servicemember still has "the 15 years permitted for petitioning the [Review Board] and the three years for a further petition to the [Correction Board]") (dictum).[10]

The reasoning of *Crown Coat* and *Spannaus* also indicates why *Walters v. Secretary of Defense,* 725 F.2d 107 (D.C.Cir.1983), on which the Secretaries rely, is inapplicable. *Walters* held that the statute of limitations for filing "all civil actions" against the United States, 28 U.S.C. § 2401(a), begins to run from the date of discharge when the servicemember makes no effort to exhaust administrative remedies. *Id.* at 115. *Walters* is clearly distinguishable from the instant appeals because it treated the administrative remedies as "permissive," i.e., they were not a prerequisite to bringing a civil action. *Walters,* 725 F.2d at 114; *accord Hurick v. Lehman,* 782 F.2d 984, 987 (Fed.Cir.1986); *Mitchell v. United States,* 26 Cl.Ct. 1329, 1331 (1992), *aff'd* 1 F.3d 1252 (Fed.Cir.1993). Such a conclusion was necessary because the plaintiff had not exhausted his administrative remedies, so that if they were not "permissive," the action would have been dismissed as being premature. *Walters,* 725 F.2d at 114. As a result, *Walters* would arguably govern our analysis only in the absence of the Army's regulation requiring exhaustion of other remedies. *Cf. Lichtenfels v. Orr,* 604 F.Supp. 271, 275–76 (S.D.Ohio 1984) (ruling that application to Correction Board is a prerequisite to suit and, therefore, six-year statute of limitations for filing suit does not

begin to run until Correction Board has issued its decision), *aff'd,* 878 F.2d 1444 (Fed. Cir.1989).

The district court was rightfully concerned that the result we reach today might thwart the purposes of the Correction Board's three-year statute of limitations. *Ortiz v. Secretary of Defense,* 842 F.Supp. at 11. However, the district court's interpretation does equal violence to the Review Board's fifteen-year limitation period by effectively reducing it to three years. This unusual circumstance arises because Congress has enacted such dramatically different limitations periods for two boards that engage in strikingly similar endeavors. The interpretation we adopt, however, does less violence to these statutes, and to the Congressional concern for servicemembers evident from them, than that embraced by the district court.

First, our decision follows the general obligation of courts to interpret two statutes by making both fully effective. *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974); *Mail Order Ass'n of America v. United States Postal Service,* 986 F.2d 509, 515 (D.C.Cir.1993). It is also consistent with the canon of statutory construction that greater effect should be given to the more specific statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *Mail Order Ass'n,* 986 F.2d at 515. The Review Board statute, § 1553, addresses only claims for review of non-court martial discharges and dismissals, while the Correction Board's statute, § 1552, broadly encompasses claims for review of any military rec-

---

**10.** Several district court opinions also support this conclusion. *See Bittner,* 625 F.Supp. 1022, 1029 n. 2 (D.D.C.1985); *White v. Secretary of the Army* 629 F.Supp. 64, 68 n. 4 (D.D.C.1984); *Lewis v. Secretary of the Navy,* No. 89–1446, 1990 WL 454624, at *7 (D.D.C. June 29, 1990).

Because we conclude as a matter of statutory construction that the Correction Board's statute of limitations begins to run when the Review Board denies an application, appellants' responses to the question on the application forms regarding the date of discovery of the error or injustice are irrelevant. Accordingly, the Secretaries' reliance on these responses and on the fact that both appellants responded to a question

predicated on the passage of more than three years since the discovery of the error or injustice is misplaced. Indeed, it is obvious from the applications that appellants were filling out these forms without the aid of counsel; under such circumstances, the application's confusing questions should not be used as a trap to deprive those unfamiliar with the Correction Board's procedures of their full three-year limitation period. Neither the Correction Board nor the district court referred to appellants' responses in their applications as conceding that the three-year statute of limitations began to run on the date of their discharges.

ord, including discharge records. Congress thus could reasonably intend that a short limitation period apply to general claims for the correction of military records but that a much longer period apply specifically to discharge review, a subset of records correction. Although the longer period for review of discharges and dismissals may result in some cases coming to the Correction Board up to eighteen years after discharge, it leaves intact the shorter three-year limitation period for all other record correction requests.

Second, given the remedial nature of the administrative scheme for correction of erroneous or unjust dismissals and discharges, there is a presumption in favor of having the merits of such claims heard. *See Van Bourg,* 388 F.2d at 565 (Congress has determined that timely filed applications are to be decided on the merits). That Congress included many exceptions to the three-year limitation period supports this interpretation. For example, that the Correction Board's limitation period begins to run at the time the servicemember discovers the error or injustice, rather than at the time the error or injustice actually arose, shows Congress' intent to liberally grant review and suggests its confidence in the Correction Board's ability to decide applications regarding events more than three years in the past. *See Mullen v. United States,* 19 Cl.Ct. at 551 (holding that application before the Correction Board was timely, although filed over eleven years after discharge, because applicant did not discover the error until he was diagnosed with Post-Traumatic Stress Disorder over ten years after discharge); *see also* 10 U.S.C. § 1552(b) (1982) (amended 1988) (three-year limitation period enacted in 1951 did not apply to applications filed before 1961). In-

deed, in the interest of justice the Correction Board may waive its limitations period and consider an application regardless of its age. 10 U.S.C. § 1552(b). The record indicates that such waivers were routinely granted by the Correction Board at one time. *See* Declaration of Karl Bielenberg 1, Joint Appendix 336. Regardless of the reasons, the Correction Board has, in fact, evaluated the merits of applications filed decades after the events in question. *See Gottlieb v. Peña,* 41 F.3d 730 (D.C.Cir.1994) (Correction Board considered the merits of application to reconsider its previous decision, made over forty years earlier); *Swann v. Garrett,* 811 F.Supp. 1336, 1337–38, 1343 (N.D.Ind.1992) (Correction Board decided application regarding events that occurred forty years earlier); *see also Van Bourg,* 388 F.2d at 563 (application filed fourteen years after discharge); *Geyen,* 775 F.2d at 1305–06 (application filed ten years after discharge). Our recent decision in *Detweiler v. Peña,* 38 F.3d 591, 591–92 (D.C.Cir. 1994), holding that § 205 of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 525, tolls the three-year limitation period during a servicemember's period of active duty, will result in the Correction Board evaluating the merits of other applications filed more than three years after the events involved.[11]

Accordingly, we hold that because appellants filed their applications with the Correction Board within three years of the Review Board's final decisions on their applications, the district court erred in ruling that the applications were untimely. Therefore, we reverse the grants of summary judgment and remand for a Correction Board determination of the merits of appellants' applica-

---

**11.** The remedial nature of the legislation also leads us to reject the contention that the three-year limitation period should simply be tolled during the pendency of an application before the Review Board. Tolling would still require servicemembers to file an application with the Review Board within three years after discharge. This requirement would be inequitable because § 1553(a) provides that a servicemember has fifteen years in which to apply to the Review Board. *Cf. Vietnam Veterans of America v. Secretary of the Navy,* 642 F.Supp. 154, 157 (refusing

to apply the doctrine of laches when servicemembers did not seek upgrade from the Review Board until ten years after their discharges because such a delay was reasonable in light of § 1553(a)), *aff'd in part and reversed in part on other grounds,* 843 F.2d 528 (D.C.Cir.1988). That servicemembers go through the review process without the assistance of counsel, *see supra* note 10, makes it more imperative that the plain meaning of the statutes and regulations not be deceptive.

tions. *See Ridgely v. Marsh,* 866 F.2d 1526, 1530 (D.C.Cir.1989).[12]

**12.** In view of our disposition, we do not reach appellants' contentions that the district court erred in ruling that the decisions of the Correction Board not to waive the three-year statute of limitations in the "interest of justice" are unreviewable, and alternatively, that if reviewable, they were neither arbitrary nor capricious.